# Bickley *v.* Bickley.

*Bill in Equity for Alimony; and Cross Bill Asking for
Divorce,*

1. *Equity pleading; cross bill for divorce can be maintained by de-
   fendant against complainant asking for alimony.*—Where a
   bill is filed by a wife asking not for a divorce but for alimony
   out of her husband's estate, upon the ground of his deser-
   tion of her, the husband can maintain a cross bill against the
   complainant in the original suit, asking for a divorce *a vin-
   culo matirmonii,* upon the ground of her adultery; and upon
   the charge being satisfactorily proved, he is entitled to the
   affirmative relief of divorce.

2. *Bill for divorce; admissibility in evidence of letters tending to
   show improper relations between defendant and third person.*
   On a bill by a husband seeking a divorce from his wife on
   the ground of her adultery, a letter written a short time prior
   to the marriage of the complainant and the defendant tend-
   ing to show adulterous relations between the defendant and
   a third person, is admissible in evidence in connection with
   evidence of similar acts during the marriage, for the purpose
   of proving the adulterous intercourse charged.

3. *Same; admissibility of letters from wife to third person.*
   Where, in a bill filed by a husband seeking a divorce from
   his wife on the ground of adultery, it is charged among other
   things that the wife wrote to her paramour (naming him) af-
   fectionate letters suggesting adulterous relations, and that
   he, in turn, wrote letters to her, and copies of such letters
   are attached to the bill as exhibits, and it is proved by the
   complainant and another witness that the copies of said let-
   ters were true and correct and were made by them, and the
   wife in her answer to such bill and upon her examination as
   a witness stated that she never wrote or received any of
   the letters attached to exhibits of such bill, but the para-
   mour, as a witness, testified to having received from her and

[Bickley v. Bickley.]

written to her said letters and that he had burned the letters he received, it is competent to introduce the copies of said letters in evidence, and it is no objection to the sufficiency of the evidence touching the contents of such letters, that the originals had not been produced or sufficiently accounted for.

4. *Deposition; when motion to suppress properly overruled.*—When a certificate of a commissioner to a deposition is not set out in the record, the ruling of the chancellor in refusing to grant the motion to suppress the deposition of said witness, upon the ground that there was no legal certificate attached thereto, will not be reviewed.

APPEAL from the Chancery Court of Colbert.

Heard before the Hon. WILLIAM H. SIMPSON.

The original bill in this case was filed by the appellant, Susan P. Bickley, against Elbert L. Bickley and Clarence T. Bickley. The purpose of the bill was to have alimony granted the complainant upon the ground of the voluntary abandonment of her by her husband, Elbert L. Bickley. It was averred in the bill that during the absence of Elbert L. Bickley, he left his nephew, Clarence T. Bickley, in charge of his property and for this reason Clarence T. Bickley was made a party defendant.

The respondent Elbert L. Bickley, filed his answer which he asked to be taken as a cross bill in which he set up that the cause of his leaving the complainant was that he had discovered that she had been unfaithful and untrue to him and that she had been guilty of adulterous true to him, and that she had been guilty of adulterous intercourse with another man. The prayer of the cross bill was that the cross complainant be granted a divorce from the marriage bonds with the defendant because of her adultery, and that he be permitted to marry again.

The respondent to the cross bill moved to dismiss the cross bill upon the ground that there was no equity therein. The respondent to the cross bill also demurred to the bill upon the following grounds: 1. That said cross bill is wanting in equity and should be dismissed, because the right or equity therein set up has no connection with, and is not germane to the original bill filed in

[Bickley v. Bickley.]

this cause; but its subject matter is distinct and independent of the right asserted by said original bill and does not pertain to it.   2. That said cross bill should be dismissed out of this court, because the decree of divorce asked by the complainant in said cross bill does not grow out of any matter alleged in said original bill, in this, that said original bill seeks an allowance to the complainant therein out of the estate of her husband, who has failed to provide for her, and said cross bill seeks independent relief of a divorce to the complaint therein, the rights to which, if it exists, is distinct from, and not germane to the subject matter of the original bill.   3. That the right sought by said cross bill is a divorce from the complainant in the original bill, which should be sought, if any grounds could be alleged therefor, by an original bill, to which the complainant in the original bill in this cause might make answer, and if there were grounds on which she should be granted a divorce have the opportunity to present the same by her cross bill and obtain a decree therefor which can not be done in this cause.

The facts of the case are sufficiently shown in the opinion.

On the final submission of the cause upon the pleadings and proof, the chancellor rendered a decree overruling the motion to dismiss the cross bill and overruling the demurrers thereto, and further decreed that the complainant in the original bill was not entitled to the relief prayed for, and ordered her bill dismissed; and then decreed that the complainant in the cross bill was entitled to the relief prayed for in his cross bill, and ordered that he be granted a divorce as prayed for.

The complainant in the original bill, who was the respondent in the cross bill, prosecutes the present appeal, and assigns as error the rendition of said decree.

THOS. R. ROULHAC and JAMES JACKSON, for appellant. The original bill was filed by a married woman for allowance for support out of her husband's estate after he de-

[Bickley v. Bickley.]

serted her. The cross bill is filed for divorce. This, it is insisted, is not germane to the original cause, as sustained by the following authorities: *Davis v. Cook*, 65 Ala. 623; *Cullum v. Erwin*, 4 Ala. 461; *Nelson v. Dunn*, 15 Ala. 501; *Andrews v. Hobson*, 23 Ala. 230; *Ketchum v. Creagh*, 53 Ala. 224; *Pitts v. Powledge*, 56 Ala. 147; *In re Tallassee Mfg. Co.*, 64 Ala. 567; *Taunton v. McInnish*, 46 Ala. 619; *Gilman v. N. O. & S. R. Co.*, 72 Ala. 566; *Watts v. Eufaula Nat. Bank*, 76 Ala. 474; *Continental Ins. Co. v. Webb*, 54 Ala. 688; *Grimball v. Patton*, 70 Ala. 626; *Tutwiler v. Dunlap*, 71 Ala. 126; *Shelton v. Carpenter*, 60 Ala. 201; *Rapier v. Gulf City Co.*, 64 Ala. 330; *O'Neill v. Perryman*, 102 Ala. 522; *Mims v. Mims*, 33 Ala. 98; *Wray v. Wray*, 33 Ala. 187; *Hinds v. Hinds*, 80 Ala. 226; *Murray v. Murray*, 84 Ala. 364; *Brindley v. Brindley*, 115 Ala. 474; *Bickley v. Bickley*, 29 So. Rep. *Brindley v. Brindley*, 121 Ala. 429; *Farmer v. Farmer*, 86 Ala. 322; Code of Ala. §§ 1496-8.

If a cross-bill is permitted to the husband, in a suit of this nature, the wife would be prevented from obtaining a divorce in her own behalf, and for his demerits, as she could not file a cross-bill to his cross-bill, nor amend her own bill, for that would be a change in the character of the bill.—*McDougald v. Dougherty*, 14 Ga. 679; *Brown v. Troup*, 33 Miss. 35.

Copies of letters and documents are only received, when, under proper predicates, it is shown that the originals cannot be produced by the party offering the copies, and never then, when it is shown that such party or witness has voluntarily destroyed them.—1. Greenl. on Ev. § 560, n. l.; *Doe v. Hodgson*, 4 P. & D. 142; 12 Ad. & El. 135; 11 Ency. of Law, (2d ed.), p. 504; *Ins. Co. v. Moog*, 78 Ala. 307-8; *Clifton v. The United States*, 4 How. 246; *Commonwealth v. Webster*, 5 Cush. 295; 52 Am. Rep. 728; *Chicago &c. R. Co. v. McMahon*, 103 Ill. 485; 42 Am. Rep. 29; *U. P. R. R. Co. v. Botsford*, 141 U. S. 255; *U. S. v. Corwin*, 129 U. S. 386; *Runkle v. Burnham*, 153 U. S. 236; *McCormick v. Anderson*, 83 Ala. 403.

[Bickley v. Bickley.]

KIRK, CARMICHAEL & RATHER, *contra.*—The defendant in the original suit could maintain a cross bill asking for the affirmative relief of a divorce. The statute seems cleary to cover such case as the present.—Code, § 720.

"A cross bill, *ex vi termini,* implies a bill by a defendant against the plaintiff in the same suit or against other defendants in the same suit, or against both, touching the matters in question in the original bill.—54 Ala. 694.

This proceeding was instituted for alimony unconnected with any proceeding for divorce. The adjudicated cases in this State establish the right of the complainant to so proceed in this case.—*Brindley v. Brindley,* 121 Ala. 431.

"A cross petition for divorce was held to be a counter claim under the Iowa Code which required that a counter claim must arise out of the contract as set forth in the petition or connected with the subject of the action.—*Wilson v. Wilson,* 40 Iowa, 230; *Dodd v. Dodd,* 14 Oregon, 338.

In the cross bill or answer in the nature thereof, the defendant may seek any relief concerning the marriage relation regardless of the relief prayed for in the petition—she may petition for alimony without divorce.—*Butler v. Butler,* 38 N. J. Eq. 626.

HARALSON, J.—1. In England the law of marriage and divorce, in its administration, was committed to the ecclesiastical courts; and as we have no such courts in this country, and never had, observes Mr. Bishop, "no tribunal in this country can take jurisdiction of this class of cases, without authority from a statute;" but, when a statute has given the authority, the tribunal is to exercise it, according to the practice in the ecclesiastical courts, modified to harmonize with the practice in our courts, and not opposed or repugnant to the constitution and statutes of the State."—1 Bishop on Marriage and Divorce, §§ 70, 71, 79. In most States, and in Alabama, statutes have been enacted conferring jurisdiction of

these subjects on the courts of chancery.—Code, §§ 1485 *et seq.*

The statutes are silent as to a cross-bill by a defendant asking for affirmative relief, in suits for divorce or alimony. This does not imply that under the general rules of practice of such courts, as in the ecclesiastical courts, such relief may not be sought and had.

In 7 Ency. of Pleading and Practice, 96, it is said: "In the ecclesiastical courts, the defendant might obtain any relief concerning the marriage relation, such as a separation, a restitution of conjugal rights, or a decree annulling the marriage, and this regardless of the relief prayed for in the petition. In the absence of any special statute [provision] in the statutes relating to divorce, and in those states where the provisions of the Code relating to counter-claims do not include a cross-demand for affirmative relief, the practice of the ecclesiastica courts may be followed, on the ground that such practice, in the absence of any other, has been adopted as a part of our common law."

On the same subject, Mr. Bishop says: "The practice of bringing a cross-suit by defendant against the plaintiff, to aid the defense and obtain affirmative relief, may be resorted to in divorce cases the same as in any others. It is permissible equally whether the proceeding is by bill in equity, by libel corresponding to the ecclesiastical libel, or by statutory complaint."—2 Bish. on Marriage and Divorce, § 318; *Dodd v. Dodd,* 14 Oregon, 338; *Wuest v. Wuest,* 17 Nev. 217; *Blakeley v. Blakeley,* 89 Cal. 324.

In this State it is provided, that "A defendant may obtain relief against a party complainant or defendant for any cause connected with or growing out of a bill, by alleging in his answer, and as a part thereof, the facts upon which such relief is prayed. The matters of fact thus alleged and put in issue must be considered in the nature of a cross-bill, and be heard at the same time as the original bill."—Code, § 720.

This is a suit, not for divorce by the wife, but for alimony out of the husband's estate, on account of his de-

sertion of her, and his failure to provide for her. If it were for a divorce, it seems to be well settled, the husband might be allowed in his answer in the way of a cross-bill, or counter-claim, to demand and obtain the affirmative relief of divorce, when shown to be entitled thereto. We discover no distinction in principle, as to this right, when a bill competent to be filed under our divorce system is for alimony alone.—*Brindley v. Brindley*, 121 Ala. 429. It would be unnecessary and vexatious to require the defendant, in such case, to bring a new suit and go over the same matters, which could as well be brought forward in the existing suit. The rights of the parties could be adjusted in the one as well as in bringing another suit, thereby avoiding inconvenience and delay. Whatever can be done consistently with the law to put an end to vexatious and irritating litigations ought to be done. Aside from this, however, a suit for alimony concerns directly, and is cognate to the marriage relation between the parties. It touches matters in question in the original bill. "A cross-bill, *ex vi termini*, implies a bill by defendant against the plaintiff in the same suit, or against other defendants in the same suit, or against both, touching the matters in question in the original bill. * * It is regarded as auxiliary to, or as a dependency upon the original suit, and its subject matter is that of the original bill."—*C. L. Ins. Co. v. Webb*, 54 Ala. 694; *Wilkinson v. Roper*, 74 Ala. 141. As a proper defense to the suit for alimony alone, the defendant set up the adultery of the complainant, his wife, and this fact being alleged in the answer, and being a fact upon proof of which defendant was entitled to a divorce, it was competent for him to make his answer a cross-bill, and pray for affirmative relief.—Code, §§ 1496, 1498.

The court committed no error in overruling the demurrer to, and the motion to dismiss the cross-bill.

2. There was no error in the introduction of the letter purporting to have been written by Charles Rushing to the complainant, attached to defendant's cross-bill, as exhibit A. This was an original document, shown to be

in the hand writing of said Rushing, and received by complainant. The evidence is wanting to show that the date of said letter was suppressed, or that it bore any date, but the proof satisfactorily shows it was written, on August 28th, 1899, before complainant's marriage with the defendant, E. L. Bickley,—on the 14th of September of that year. Nor did the fact that it was written to and received by her, before her marriage with defendant, render it inadmissible. On a charge of illicit intercourse, after marriage, evidence of acts not long anterior thereto, tending to show illicit relations between the accused and a third person, is admissible, in connection with evidence of similar acts, during the marriage, to prove the illicit intercourse charged.—*Alsabrook v. The State*, 52 Ala. 24.

Letters B and C, copies of which are attached to the cross-bill, are claimed to have been written by complainant to her alleged paramour, Charles Rushing; the one, on the 21st and the other on the 27th January, 1900.

The ones attached thereto marked exhibits D., E. and F., dated, respectively, "Nashville, January 26, 2-9 and 2-16 (the 9th and 16th February) 1900," are claimed to have been written by said Rushing to complainant.

As to letters B. and C., Clarence Bickley, a witness and kinsman of E. L. Bickley, testified, that he had seen the original of which the exhibit B. was a copy; that the original was found in his room, at the house of E. L. Bickley and wife, in a trunk belonging to Mrs. Bickley; that the letter was sealed and addressed to Charles Rushing, Nashville, Tenn., Box 62; that he unlocked the trunk, his uncle, E. L. Bickley, being with him; that they unsealed the letter and next day made a copy of it, when the letter was re-sealed and placed back in the trunk; that he knew the hand writing of Mrs. Bickley and the letter was in her hand writing; that the next day Mrs. Bickley handed him two or three letters to mail, and among them was this letter, postage paid, and he carried it to and deposited it in the post office; and afterwards, when he mailed another letter for her to said Rushing, she told him he was a young lawyer living in

Nashville. As to letter C. he deposed, that the original of which the exhibit was a true copy, was handed to him by Mrs. Bickley to be mailed, and he carried said letter to the office of E. L. Bickley, where they opened, read and made a copy of it; and the letter was in the hand writing of Mrs. Bickley, and after copying, he carried it to the post office and mailed it.

E. L. Bickley deposed to the same facts, and fully sustains Clarence as to the procurement of these two letters, of their being in the handwriting of complainant and as to the correct copies of the same attached as exhibits to the cross-bill.

As to letters D and E, said Clarence testified, as to the first, that he got the original out of Mrs. Bickley's trunk the night after she received it, and carried it the next morning to E. L. Bickley's office, and it was there read by each of them and copied; that it was in an envelope, which had been opened, addressed to Mrs. E. L. Bickley, Tuscumbia, Ala., and that this letter was in the same handwriting as exhibit A.; and to the second,—exhibit E.,—he testified, that it was in the same handwriting as exhibit A.; was addressed as the original, D., was; that he received it from the postoffice, and carried it to E. L. Bickley's office where they opened, read and made a copy of it, which is attached to the cross-bill. He testified substantially to the same thing as to exhibit F. What he said was: "I saw the original of which exhibit F. is a copy, in an envelope, post-marked, Nashville, Tenn. postage prepaid, addressed to Mrs. E. L. Bickley, Tuscumbia, Ala.; it was in the same handwriting as the original of exhibit A. I know she received it, because I delivered it to her." On the cross he stated, that he carried this letter also to his uncle's office where it was opened and read and a copy taken, after which it was re-sealed and delivered to complainant.

These statements of Clarence as to the originals of these letters, their reading and correct copying are also fully corroborated by said E. L. Bickley; his testimony in these respects being the same in substance as that of said Clarence.

The witness, Rushing, also testified to his having received the letters referred to, purporting to have been written to him by Mrs. Bickley, and those written by him in reply to her, and that the copies attached to the cross-bill were correct copies. He also testified as to those received by him from her, that he burned them after he received them.

3. The complainant moved to exclude all of said letters, because, in substance, the originals, if ever they existed, had not been procured or sufficiently accounted for to justify the introduction of secondary evidence touching their contents.

Mrs. Bickley, in her examination as a witness for herself, testified that she never wrote or received any of the letters attached as exhibits to the cross-bill. The ones she wrote to Rushing, she is not presumed to have in her possession, but she fully and distinctly disclaimed having written them; and, as for those alleged to have been written by him to her, she also denied ever having received them and declared her consequent inability to produce them, when called on.

The principle is fully recognized and admitted, that secondary evidence cannot be substituted for any writing the existence of which is disputed, and which is material either to the issues between the parties or to the credit of the witness, and is not merely a memorandum of some other fact.—1 Greenleaf Ev., § 88. But this rule may be misapplied. As is observed by this court, that while true, "that proof in writing is of a higher grade than mere oral testimony, and must in general be produced, if in existence, or its non-production will afford ground to presume that the party has some secret and sinister motive, and is conscious if the best evidence were adduced, his object would be frustrated; yet, it is not always necessary that the written evidence by which a fact may be proved, should be produced. Its production will not be required, where the adversary has admitted the fact which is to be proved, for he is generally bound by his own admissions."—*Paysant v. Ware*, 1 Ala. 170.

Again, the admission of a party against whom secon-

dary evidence of the contents of a written instrument is offered to be given, that the instrument is lost, will be sufficient to let in the inferior proof.—*Cooper v. Madden*, 6 Ala. 431.

Here, the complainant on her oral examination, when requested to produce the letters, denied that she had ever received any letters of the kind from said Rushing, and also denied that she had written those to him, copies of which were attached to the cross-bill. In her answer to the cross-bill, she had positively and indignantly denied having written or received any of such letters, and denounced them as fabrications and forgeries. Under such conditions, it was unnecessary for the defendant to give her notice to produce these documents. It would have been useless to demand papers from her, in order to let in secondary evidence of their contents, when she had thus denied ever having had such papers.

4. It is urged that the copies of letters by complainant to Rushing, could not be shown by him, since he testified to having destroyed them, when received and read by him. Whether that rule obtains, when it appears that they were not destroyed in order to suppress them as evidence, and from no evil intentions, we need not decide. Without his evidence, as to these letters, the other proof in the case may be deemed sufficient to show, that the copies produced were correct copies of originals which had been written by the parties to each other.

5. There is no certificate of the commissioner set out in the record, but we find a motion by complainant to suppress the deposition of Charles Rushing because, as alleged in the motion, there is no legal certificate of and to said disposition by the said commissioner. Its illegality is stated in the motion to consist in the fact that the commissioner did not certify, "that he is not of counsel or of kin to any one or either of the parties to the cause in which said deposition was taken," but certifies "that he is not of counsel, or kin to either of the parties in said cause." We can scarcely be expected to pass on the merits of this motion, without the certificate before

us; but if the objection as stated were correct, it is merely technical and without merit.

6.   The testimony in the cause is very voluminous, and as between the parties, in irreconcilable and distressing conflict. To discuss it in its various bearings would extend this opinion to an extraordinary length, without satisfaction to the losing party. The learned chancellor in his opinion in the cause says: "After a careful consideration of the voluminous testimony on file in the cause, the court is of the opinion that the complainant in the cross-bill, Elbert L. Bickley, is entitled to relief; and that complainant in the original bill is not entitled to any relief, except such provision for her maintenance as the court may in its discretion award her upon the rendition of a decree of divorce on the cross-bill in favor of her husband, for her misconduct. It appears from the evidence that the husband was kind to the wife and was not at fault in his relations with her. He provided well for her, seemed devoted to her, and tried in every reasonable way to make her happy and contented, until her want of love for him and infidelity manifested itself so plainly that he could not afford to live with her longer without forfeiting his own self-respect, as well as the respect of the community in which they lived. The conduct of the complainant toward her husband was anything but praiseworthy. From the very beginning of their married life, or soon thereafter, she was inconsiderate and disrespectful in her bearing toward him, and pursued a course of conduct, both in public and private, calculated to vex, harass and humiliate him. She showed clearly by word and act, that she had no affection for her husband and preferred the society of other men. She carried on an extended clandestine correspondence with one Charles Rushing, the tone and character of which shows that illicit intercourse was contemplated and designed, the purpose thereof being to make plans and opportunities for such criminal relations. It finally culminated in her committing, with said Rushing, the greatest crime against the married relation, towit, adultery. It is proven positively by said Rushing's testimony; and while there is

some evidence tending to impeach or weaken the testimony of this witness, it is so thoroughly corrobrated by the letters, and copies of letters, written by her to Rushing, and by him to her, and by all the circumstances, the court is forced to the conclusion that his evidence is true." The testimony has been here examined, and we see no good reasons for differing with the chancellor.

The foregoing cover the only assignments of error insisted on in argument of counsel. Finding no error in the decree, let it be affirmed.

Affirmed.