EMIL DOLD, APPELLANT, V. ERSON MUNSOR ET AL.,
APPELLEES.

FILED JANUARY 26, 1922.   No. 21906.

1. **Jury:** TRIAL BY JURY DENIED. In this an action to recover the possession of real estate, to cancel a mortgage thereon executed by defendant, and to quiet the title of plaintiff, in which action the defendant admits plaintiff's title, but prays for specific performance of an alleged contract of sale to defendant, and to quiet the title in him, plaintiff is not entitled to a trial by jury as a matter of right, and it was not error to refuse it.

2. **Evidence:** SECONDARY EVIDENCE. Where plaintiff denies that a written contract, which defendant testifies is in his possession, ever existed, or that he ever had such a paper, such a denial furnishes sufficient foundation for the introduction of secondary evidence of the contents of the paper, without the service of a notice to produce the paper, or the issuance and service of a subpœna *duces tecum.*

3. **Appeal:** TRIAL DE NOVO. Although the issues of fact in an equity case are required to be tried *de novo* upon appeal to this court, where the evidence is conflicting, this court will consider the fact that the trial court had the opportunity of seeing and hearing the witnesses, and will give consideration to this fact and to its findings in determining which witnesses are most worthy of belief.

APPEAL from the district court for Sherman county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*Lamont L Stephens* and *Clifford L. Rein,* for appellant.

*Aaron Wall, J. S. Pedler* and *R. H. Mathew, contra.*

Heard before LETTON, DAY and DEAN, JJ., BEGLEY and HOSTETLER, District Judges.

LETTON, J.

This action was brought to recover possession of a certain lot in the town of Ashton, to set aside a certain mortgage upon the premises executed by the defendant Munsor to Swenson Brothers Company, and to quiet

plaintiff's title as against the claims of Munsor and the mortgagee. Defendants admit that the legal title to the property is in the plaintiff, but the cross-petition of Munsor alleges that by an arrangement made in 1915, verbally, and afterwards merged into a written contract, Dold agreed to furnish money to buy a lot and erect a store building thereon for the use and benefit of Munsor, and that Munsor was to pay the cost of the lot, the building and other improvements, and to pay interest at the rate of 7 per cent. per annum of this amount, payable monthly, and that on January 1, 1921, provided $500 or more had then been paid on the purchase price, Dold was to execute a deed to the property to Munsor, and take back a mortgage to secure the unpaid balance of the purchase price and interest. It is alleged that the written contract was never delivered to Munsor, and that he paid $800 on the contract price, and made $400 worth of improvements on the property. He prays for an accounting, that he may have specific performance of the contract, and that his title be quieted.

The facts are somewhat peculiar. The reporter's note states that Munsor is an Armenian who speaks very broken English. Plaintiff's testimony is to the effect that he leased the building to Munsor at a monthly rental of 7 per cent. upon the cost price, which rent amounted to $15.20 a month at first, and $15.70 after additional improvements had been put upon the building, and that he paid rent until July, 1919, and has paid no rent since. The testimony of Munsor is that Dold offered to furnish the money to buy a lot and erect a building for his use as a store, to be paid for as alleged in the cross-petition.

Munsor and Ayoub, a clerk employed by him, a fellow Armenian or Assyrian, who seems to be much more accomplished in the use of English than Munsor, both testify that a contract was written out by Dold, brought to the store and left with them for a short time, and afterwards taken by Dold; that several payments were made on the principal, the receipt of which was in-

dorsed on the contract by Dold. Dold denies that any contract of sale either oral or written was ever made, and denies that any money was paid except as rent. A number of receipts in Dold's handwriting are in the record, which recite that they are "for interest on building." Munsor and Ayoub testify that Munsor asked for a copy of the contract, and that Dold said, "No, you don't need no copy, whatever you pay I will mark it on the back of this contract just the same as a receipt;" that, when the taxes were spoken of, Dold said that he would pay the taxes, and at the end of 5 years, when Munsor got the deed, they would figure up and settle the amount due, giving proper credits for all money paid. Ayoub testified that in July, 1919, Munsor was about to sell the property to one Gehring, but Dold refused to make a deed; that afterwards Dold offered to sell the building to Gehring, and that Munsor objected, saying it was his building, and the sale was not consummated on that account, and that after that Dold did not call for the interest, and no interest has since been paid. On rebuttal Dold denied any such conversations, and the agent with whom Munsor testified he had some negotiations for the purchase of the lot denied this, and said that all of his transactions as to the lot were with Dold.

The court decreed specific performance of the contract, gave Dold a first lien for the balance found due, and provided that in default of payment the contract be foreclosed, and the premises sold to pay this and the amount due the other cross-petitioner.

The evidence is in hopeless conflict. The store was broken into and the books in which Munsor testifies the cash payments were entered were stolen. It is impossible that all the testimony of Ayoub can be true, because it is, in part, self-contradictory. The written document which he produced, and upon which he testified he indorsed the payments made on the principal at the time they were made, bears internal evidence that the entries were not made at that time. The strongest evidence in

favor of Munsor is that furnished by the 23 receipts in
the handwriting of Dold, which recite the payment of in-
terest "on store building," or words of like effect, by
Munsor. The receipts are in accordance with the terms
of. the alleged contract. It seems incredible that, if the
relation between the parties was merely that of landlord
and tenant, the receipts would not be for "rent," instead
of for "interest." An attempt is made to explain this by
saying that 7 per cent. upon the cost of the building and
lot was to be the monthly rental; but, when considered
in connection with other circumstances in the record,
this is not a satisfactory explanation. The trial court
had the witnesses before him, and was better able to
judge of the truthfulness of their testimony than this
court. Giving consideration to this, we have reached the
same conclusion as to the facts which that court did.

Several errors are assigned that must be mentioned.
The refusal of a jury trial is alleged as error. The peti-
tion clearly states a cause of action for equitable relief.
It prays that the defendants be required to set up any
claim or interest they may have in the premises; that said
claim be decreed to be void; that the apparent lien of
the Swenson Brothers Company mortgage be removed;
that the mortgage be canceled; and that the title be
quieted in the plaintiffs. Furthermore, defendants ad-
mit that plaintiff is the owner of the legal title, and that
no money had been paid him since July, 1919. Under
these admissions, plaintiff would have been entitled to a
judgment on the pleadings, and there would be nothing
for a court or jury to pass on, were it not for the equi-
table issues raised by the cross-petition. Plaintiff was
not entitled to a jury trial.

It is assigned that the decree is not supported by
sufficient evidence, the main contention in this respect
being that the court admitted secondary evidence of the
contents of the written contract, when no notice had been
served upon plaintiff to produce it. The record shows
that when the objection was first made it was sustained,

but that when it became clearly apparent to the court that plaintiff denied that any such contract had ever been in existence, that if it ever did exist it was in his custody and control, and that the service upon him of a formal notice to produce it would have been fruitless, the court properly permitted the witness to state its terms. In this there is no error. It has repeatedly been held that a person is excused from making a tender where a tender would be fruitless. The same principle applies to the giving of notice to produce a paper, to a party to the suit who testifies and contends that such a paper was never in existence. The law does not require a vain thing, and such a denial furnishes sufficient foundation for the introduction of secondary evidence of the contents of the alleged contract. *Mack v. Mack,* 94 Neb. 504; *Bickley v. Bickley,* 136 Ala. 548, 558; *Foster v. Pointer,* 9 Car. & P. (Eng.) 718; *Hamilton v. Rice,* 15 Tex. 382; *Augur Steele Axle & Gearing Co. v. Whittier,* 117 Mass. 451.

The judgment of the district court is

AFFIRMED.