## STATE *v.* LILLIAN C. WOOD.

### February Term, 1926.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK and BUTLER, JJ.

#### Opinion filed October 6, 1926.

*Witnesses—Constitutional Privilege of Refusing To Answer Incriminating Question—Court Decides Whether Testimony Privileged—Basis for Determining Whether Testimony Privileged—Criminal Law—Construction of Penal Statutes as to Extraterritorial Effect—Only Criminal Laws of State Noticed in Determining Whether Question Privileged—Privilege Held Unavailable—Perjury—Whether Evidence Shows Claimed False Testimony Material Is for Court—Admission of Transcript of Former Trial to Show Materiality of Claimed False Testimony—Admissions by Counsel—False Testimony on Question of Damages Affords Basis Prosecution for Perjury—Inadequate Briefing—Instructions of Court.*

1. Constitutional privilege of silence does not protect witness, if from facts and circumstances in case and nature of evidence witness was called to give, court could see privilege was inapplicable, or had been waived.

2. Refusal to answer questions on grounds that answers might incriminate witness is not conclusive, but question whether testimony is privileged, when properly raised by witness, is for court.

3. Whether testimony is privileged as being likely to incriminate witness must be considered and determined with reference to limitation that constitutional protection against self-incrimination is confined to real danger and does not extend to remote possibilities out of the ordinary course of law.

4. Penal statutes which use general words are to be construed as not intended to have extraterritorial effect, unless they clearly indicate a different intent.

5. In disposing of question whether respondent had right to exercise privilege of silence under constitutional protection against self-incrimination, Supreme Court will not notice criminal laws of

other states, but only danger which will be considered is such as arose within this State and under State sovereignty.

6. In prosecution for perjury alleged to have been committed in former case, facts and circumstances therein and nature of evidence respondent was there called to give, *held* such that there was no reasonable ground to apprehend real danger to witness in being required to answer question propounded, hence that witness was not entitled to exercise privilege of silence.

7. Where witness, not being entitled to exercise privilege of silence, was required to answer certain questions propounded, it was her duty to answer them truthfully, and, if in answering such questions, she willfully testified falsely concerning matters material to any issue then on trial, she was guilty of perjury.

8. In prosecution for perjury, whether there was any evidence from which it could be said that testimony of respondent in former case, on which information for perjury was based, was material to any issue in that case, *held* question of law for court to decide.

9. In prosecution for perjury alleged to have been committed in former case, transcript of former trial is admissible for purpose of showing that evidence embodied in information was material to issue involved in that case.

10. In such prosecution, statements of respondent's counsel as to purpose of respondent's testimony in former case, tending to show its materiality to issues there involved, made at trial, in open court, *held* to amount to admissions of fact.

11. In such prosecution, in view of admissions of respondent's counsel, *held* that trial court was correct in holding that testimony of respondent in former case, claimed to have been false, was material to the issue of damages in case in which it was given, and hence afforded proper basis for such prosecution.

12. Briefing which merely restates what was said at trial in saving exception is inadequate, and constitutes a waiver of the exception.

13. In prosecution for perjury, exception to charge wherein court said, "if you find she did testify falsely," instead of "if you find she willfully falsified," *held* without merit, where court both in main and supplemental charge fully explained meaning of words "testified falsely."

INFORMATION for perjury. Plea, not guilty. Trial by jury

at the September Term, 1924, Franklin County, *Fish,* J., presiding. Verdict of guilty and sentence thereon. The respondent excepted. The opinion states the case. *Exceptions overruled.*

*W. R. McFeeters* for the respondent.

*M. H. Alexander,* State's attorney, for the State.

WATSON, C. J. Subject to exception by respondent on the grounds stated below, the State was permitted to show, and did show by proper evidence, the testimony given by the respondent, after being duly sworn, as a witness called by the defendant in the trial of the case of Walter V. Phelps against E. F. Greenwood (hereinafter designated the *former case*), together with her refusals to answer certain questions then and there asked her and the rulings of the court in connection therewith—all as set forth in the information. The grounds of the exception were: (1) That the witness exercised her constitutional privilege by refusing to answer the questions referred to, because she felt that her answers "might tend to incriminate" her; (2) that the testimony relied upon to sustain the information in this case was given by her under compulsion and duress; and (3) that her answers on which the information is based were not material to any issue in the case in which they were given.

[1] Regarding the first ground, the court held as a matter of law that the constitutional privilege of silence did not protect the respondent from this prosecution. This holding was sound if, from the facts and the circumstances shown in this case and the nature of the evidence which the witness was called to give, the court could see that the privilege was inapplicable (*Mason* v. *United States,* 244 U. S. 362, 61 L. ed. 1198, 37 Sup. Ct. 621; *In re Consolidated Rendering Co.,* 80 Vt. 55, 66 Atl. 790, 11 Ann. Cas. 1069, Affirmed 207 U. S. 541, 52 L. ed. 327, 28 Sup. Ct. 178, 12 Ann. Cas. 658), or, having such privilege, she waived it. *State* v *Duncan,* 78 Vt. 364, 63 Atl. 225, 4 L. R. A. (N. S.) 1144, 112 A. S. R. 922, 6 Ann. Cas. 602.

[2] The contention of the respondent seems to be, however, that her refusal to answer the particular questions because she feared her answers, if given, might tend to incriminate her, was conclusive as to the tendency. But her statement in such respect was not conclusive. By the established rule in this State, the

question whether the testimony was privileged, when properly raised by the witness, was for the court to decide. This was the holding in the case of *In re Consolidated Rendering Company, supra,* where the question was decided on such full discussion and review of authorities that a reexamination of the question at this time can serve no beneficial purpose.

[3] Not only is the foregoing question for the court to decide, but it is to be considered and determined with reference to the limitation that "The constitutional protection against self-incrimination 'is confined to real danger, and does not extend to remote possibilities out of the ordinary course of law.' " *Mason* v. *United States, supra.*

While the record before us in the instant case is not very full in detail of circumstances, there is nothing indicating that any criminal offense was committed in this State by the respondent in taking the trip by automobile in October, 1922, with Walter V. Phelps, concerning which she refused to testify because she feared her answer to the question asked might tend to incriminate her. Indeed, there is nothing indicating that they made any stop in this State when going, except in the town of Georgia where a short stop was made in the highway to get the automobile back on the road from which it had skidded. This was in the early evening. It is common knowledge that long distances can be run in a few hours when traveling with such mode of conveyance; and, taking the route shown by the evidence, they could easily be in the state of New York, and probably were, before a very late hour at night.

[4] Whether in making this trip as and for the purpose he did, Phelps rendered himself liable criminally under the so-called "White Slave Traffic" statute (G. L. 7018-7020), is a question in no wise here involved. But certain it is that the respondent was not made liable to a penalty under that statute, by accompanying him. Nor do the provisions of No. 199, Acts of 1919, entitled "An Act Relating to Prostitition," render her so liable, for the simple reason, if for no other, that the Act has no extraterritorial effect. The acts and purposes therein specified and made penal, are by rule of construction limited to such acts and purposes within this State. For penal statutes which use general words are to be construed as not intended to have extraterritorial effect, unless they clearly indicate a different intent— an intent not indicated by this statute. *State* v. *Peet,* 80 Vt.

449, 68 Atl. 661, 14 L. R.A. (N. S.) 677, 130 A. S. R. 998; *Bishop & Co.* v. *Thompson*, 99 Vt. 17, 130 Atl. 701.

[5]   In disposing of the question whether the respondent had the right to exercise the privilege of silence, we do not notice the criminal laws of any other state, nor whether they were violated by her while on the trip in question.   The only danger to be considered is such as arose within this jurisdiction and under the state sovereignty.   *Jack* v. *Kansas*, 199 U. S. 372, 50 L. ed. 234, 26 Sup. Ct. 73, 4 Ann. Cas. 689; *Hale* v. *Henkel,* 201 U. S. 43, 50 L. ed 652, 26 Sup. Ct. 370; *State* v. *Thomas*, 98 N. C. 599, 4 S. E. 518, 2 A. S. R. 351; Wigmore Ev. § 2258.

[6]   We therefore hold that from the facts and circumstances in the former case and the nature of the evidence which the respondent was there called to give, as shown by the record now before us, there was no reasonable ground to apprehend real danger to her in being required to answer the question propounded; that consequently she was not entitled to exercise the privilege of silence, and the court was well within the proper performance of its duties in insisting that answer be made. *Regina* v. *Boyes* (1861), 1 Best & Smith, 311; *McGorray* v. *Sutter*, 80 Ohio St. 490, 89 N. E. 10, 24 L. R. A. (N. S.) 165, 131 A. S. R. 715.

The holdings in the preceding paragraph render inapplicable the doctrine urged in the respondent's brief (quoted from Jones on Evidence, § 891), "If the witness is compelled to answer, when he is entitled to his privilege, and after the question has been properly raised, his answer cannot be used against him in a subsequent criminal action; such statements are regarded as given under compulsion and duress."   On this legal proposition the authorities are not in harmony, and no inference is to be drawn from what we have here said or holdings made, as to our views concerning it.

[7]   It serves the purposes of this case to say that since the witness was not entitled to exercise the privilege of silence, it was her duty to answer truthfully, as she knew the facts to be, the questions propounded to her, and if in answering such questions she willfully testified falsely concerning matters material to any issue then on trial, it was perjury for which she is here liable, the case being otherwise made out.

[8]   But it is contended that there was no evidence in the case at bar upon which it could be said that the testimony of the

respondent in the former case, on which is based the information for perjury, was material to any issue in that case, and so it did not afford a proper basis in law for this criminal prosecution. The question thus raised was one of law for the court to decide.

[9-11]    The two Mr. McFeeters were counsel for the defendant in the trial of the former case, and also counsel for the respondent in the trial of the case at bar.   In the course of the latter trial the court sought to ascertain from the counsel thus in the two cases, as to the respondent's relation to the former case. One of the Mr. McFeeters stated the nature of that action, and that the testimony of the respondent was introduced by the defendant therein, regarding her relations with the plaintiff Phelps, in mitigation of damages.   Thereupon the court said: "That is, the testimony was offered for the purpose of showing that Mr. Phelps' relations to Mrs. Wood were such that he was not entitled to recover any considerable damages because he himself had been so related to a similar transaction that there could not any considerable harm fall to him, was that it?"   To this Mr. McFeeters answered, "It was in mitigation of damages, your honor."

Later, one of the counsel for the plaintiff in the trial of the former case was called by the State as a witness in the trial of the case at bar.   In his direct examination, the State showed by him that Mrs. Wood was improved as a witness by the defendant in that trial.   The witness was asked what issues were involved in that case.   Objection being made the court said it had already appeared by statements and answers what the case was and what the issues were.   The State's attorney said his purpose was to show that she was improved as a witness for the defense upon a certain issue in that case, whereupon the court said "the statements already before us indicate that it was upon the question of damages.   Isn't that your *understanding* about it?"   The State's attorney said it was.   Court: "Is that right, Mr. McFeeters?" The latter answered, "That is right, your honor, that is the statement that I made."   Court (addressing the State's attorney): "That is all you want to know about that, isn't it?"   The State's attorney said it was.

Still later in the trial the State's attorney offered in evidence the whole transcript in the former case, for the sole purpose of showing that the evidence embodied in the information was material to the issue involved in that case.   Objection being made by respondent's counsel to the admission of the transcript

for the purpose offered, the court said: "Doesn't the case already show, Mr. State's Attorney, in general the relevancy of the question, that it bore upon the issues of that case?" The court said in effect that such was its understanding, and excluded the evidence offered. There can be no doubt that the transcript was admissible for the purpose offered (*State* v. *Vandemark*, 77 Conn. 201, 58 Atl. 715, 1 Ann. Cas. 161), and it would seem from the record that its exclusion was because the court understood the statements of respondent's counsel, already made in the case, were distinct and formal, made for the express purpose of dispensing with formal proof, and that enough appeared therefrom to show the materiality of the evidence given by the respondent in the trial of the former case, alleged in the information to have been willfully false. It must have been apparent to counsel on both sides of the instant case that the court was giving the statements referred to the force of admissions, and if respondent's counsel understood those statements as not having such force, fairness to the court required them then and there to make their understanding in such respect known, to the end that the court might make its rulings with full knowledge of their position. In the circumstances shown by the record, we give those statements the force given them by the court below, as amounting to admissions of fact; and the same being made at the trial, in open court, by respondent's counsel, there was no error in so treating them. 3 Greenl. Ev. § 39. With the case standing thus, the trial court was clearly right in holding that the testimony of the respondent, claimed to have been false, was material to the issue of damages in the case in which it was given, and this was sufficient. *State* v. *Sargood*, 80 Vt. 415, 68 Atl. 49, 130 A. S. R. 995, 13 Ann. Cas. 367.

Respondent excepted to the rulings of the court below on the question of her having waived her claimed right of constitutional privilege of silence; but as a consequence of our holdings above all questions concerning such waiver become moot and are not further noticed.

At the close of the evidence the respondent moved that a verdict of acquittal be directed on several grounds: (1) That there is no legal or proper evidence in the case tending to show the guilt of the respondent; (2) that there is no evidence in the case tending to show that the alleged perjury was committed in testifying on a material issue in the case then on trial; (3 and 4,

condensed) that there is no evidence in the case, sufficiently corroborating the evidence of Phelps in respect to Mrs. Wood traveling with him on the trip in question; (5) that there is no evidence warranting the submission of the question of the commission of perjury with reference to respondent's testimony in the former case as to being in Massachusetts.

As to ground (5), the motion was sustained, and that part of the State's case dropped out. As to the other grounds, the motion was overruled and exception saved as to each ground. The question raised as to materiality has already been considered and decided adversely under another exception. This leaves as the only question to be noticed under the motion, the one relating to corroborating evidence.

No claim is made that Phelps did not testify fully that in making the trip mentioned in the information, leaving Enosburg October 19, 1922, by automobile, he traveled south through St. Albans, the town of Georgia, and Rutland, in this State, thence into the state of New York, and there passed through Albany, Binghamton, Elmira, and on to Buffalo; that at North Sheldon, this State, the respondent joined him and traveled with him in the same automobile from that time forward all the way over the route mentioned to Buffalo; that he met with an accident in said town of Georgia, on the main highway leading south, and called Mr. Palmer and his son, witnesses in this case, to assist him in getting out of the difficulty; that in the state of New York they stopped at Elmira five or six days, could not say exactly, at a rooming house, kept, it is claimed, by a Mrs. Siglin; that after leaving Elmira they went to Buffalo; that from Buffalo they traveled by rail to Chicago, their railroad fares being paid by himself; that from Chicago they went by railroad train through to Seattle, the witness paying their fares, arriving there in the fore part of November; that in making that entire trip the respondent accompanied him all the way from North Sheldon, the place where she first joined him, and remained with him at Seattle until some time in January, when she left there by railroad train, the witness purchasing the ticket for her transportation, Montreal, Canada, being the destination of the ticket he so purchased and gave to her, and that he saw her leave Seattle on the train.

[12] Corroborating evidence, both direct and circumstantial, was introduced by the State, and although its sufficiency

was challenged by exception, the respondent's brief contains only a substantial restatement of what was said in saving the exception at the trial. We adhere to our previous holdings that such is not adequate briefing, and is a waiver of the exception. *McAllister* v. *Benjamin,* 96 Vt. 475, 121 Atl. 263; *Burlington Grocery Co.* v. *Lines,* 96 Vt. 405, 120 Atl. 169; *Burlington ex rel. Board of School Commrs.* v. *Mayor of Burlington,* 98 Vt. 388, 127 Atl. 892. This holding applies with equal force to the exceptions saved to the overruling of the motion in arrest of judgment.

[13]  Respondent excepted to the charge wherein the court said "If you find she did falsely." It is claimed by her that the proper instruction should have been "If you find that she willfully falsified," etc. This exception is without merit. The transcript shows that the court charged in this connection that "If she did testify falsely, which means she did it willfully, she did it knowingly, understandingly, and the proper oath had been administered to her, why then she would be liable in this transaction * * * * If you think upon the presentation of the case made by the State here upon the record and proof, that she did falsify in saying that she did not travel with Phelps, she should be found guilty; but if that is not made out, she should be found not guilty by you." Again in the supplemental charge, the court told the jury among other things: "The question for your consideration is the question of fact which I submitted to you, or intended to submit to you, as to whether she committed perjury by willfully and falsely testifying in relation to not having traveled with Mr. Phelps at the time in question. That is the question I intended to submit for your consideration and for your determination in this case." To this part of the supplemental charge no exception was saved.

We think that what the court said in the main charge as to the meaning of the words "testified falsely" was sufficiently explicit to give the jury the right understanding, but if it were not so, the supplemental charge, to which no exception was taken, was plain enough in that respect to leave no reasonable room for doubt in the minds of the jury.

The foregoing either directly or indirectly, disposes of all exceptions properly presented for consideration.

*Judgment that there was no error in the proceedings, and*

*that the respondent take nothing by her exceptions.   Let execution be done.*

TAYLOR, J., sat at the hearing of this case, but later deceased and took no part in the decision here made.