STATE *v.* WALLIS N. FAIRBANKS.

November Term, 1927.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and CHASE, JJ.

Opinion filed January 13, 1928.

*Herbert G. Tupper* and *Stanley C. Wilson* for the respondent.

*J. Ward Carver,* Attorney General, *Deane C. Davis,* State's attorney, and *Charles B. Adams,* special prosecutor, for the State.

MOULTON, J.   The respondent, a married man, and the sheriff of Windsor County, was convicted of the crime of adultery, committed with Irma Stoodley, an unmarried woman, at Warren in Washington County, on July 18, 1926.   He has brought the case to this Court on exceptions; and by a petition for a new trial in which he alleges newly discovered evidence.

The first exception briefed is one taken to the exclusion of a question asked by respondent's counsel during the cross-examination of Irma Stoodley.   In order clearly to understand the scope of this exception it is necessary to review a part of the testimony as it stood at the time the question was asked.

The witness had testified that some three years before the time of the trial she became acquainted with one Dan Barney, a married man, and was accustomed to seeing him two or three times a week, and that she loved him, and had been having sexual intercourse with him upon occasions of their meeting. She met Barney on the 19th day of June, 1923, and commenced having illicit relations with him on the 12th day of the following July; that her father did not like the idea of her going with Dan Barney; that she and Dan Barney were arrested in Bellows Falls during the May preceding the trial of the present case, after they had been to a dance together, and were both charged with and pleaded guilty to the offense of operating an automobile while under the influence of intoxicating liquor; that the respondent came to the court and that, after sentence had been imposed, the witness and Dan Barney were placed on probation, and that one of the terms of her probation was that she was to keep away from Dan Barney; that, through the efforts of the respondent and the probation department, she obtained a position in Waterbury, where she did housework, being at the time on probation; that she had met Dan Barney four times since

then, in various places in Vermont and New Hampshire, and had intercourse with him, on one occasion spending two days in a camp near Woodsville, New Hampshire, and occupying the same bed with him during one night; and on one occasion hid from the respondent so that she could keep an appointment with Barney. She also testified that at the time she was put on probation in the municipal court in Bellows Falls she heard the municipal judge tell the respondent that he would have to look out for her, and that she knew that immediately thereafter the respondent wrote to obtain a position for her; that she did not like the respondent's oversight of her, and had not liked it at any time, and did not like to have him in charge of her in any way; that she was displeased when the probation department and the respondent arranged it so that she would be away from Dan Barney, and that she laid it to the respondent, and thought that it was he who was separating her from Barney; that she had written her sister shortly before the trial to the effect that it was all for the love of Dan Barney that she had done what she had done, and that she meant what she had written.

After these matters had appeared in testimony the following question was asked: "During the last two years and one-half or so, did Dan Barney furnish you money?" Counsel for the State objected on the ground that this was not cross-examination, and the court so ruled and excluded the question to which an exception was taken. No offer was made in support of the exception, but this was not necessary if the question was in fact proper cross-examination. *Knapp* v. *Wing,* 72 Vt. 334, 340, 47 Atl. 1075. The purpose of the inquiry was plain enough. The respondent sought to show a motive on the part of the witness for charging the respondent with improper intimacy with her, and that such motive consisted in her desire so to discredit the respondent that he would no longer be able to exercise restraint or oversight upon her, and thus she would be free to pursue her amorous adventures with Dan Barney.

Under these circumstances the excluded question bore directly upon the strength of the witness' claimed motive for falsifying. Dan Barney's society would be more valuable to her if in addition to his embraces it included financial assistance.

It is argued that the exclusion of the question should be upheld as a discretionary ruling, in controlling and limiting the

34

extent of the cross-examination. It was said in *State* v. *Long*, 95 Vt. 485, 491, 115 Atl. 734, 737, that:

"A reasonable opportunity to show in cross-examination that a witness is unreliable, biased, or prejudiced, is a matter of right * * * * * and much latitude is allowed in this line of cross-examination. Nevertheless the extent to which it shall be allowed to proceed rests largely in the sound discretion of the trial court, whose action will not be revised here unless an abuse of that discretion appears."

It has also been held that a ruling that can be made as a matter of discretion will be presumed to have been so made, unless the contrary affirmatively appears from the record. *Murray* v. *Nelson*, 97 Vt. 101, 110, 122 Atl. 519; *Parkhurst* v. *Healy's Estate*, 97 Vt. 295, 296, 122 Atl. 895, and cases cited; *Capital Garage Co.* v. *Powell*, 98 Vt. 303, 312, 127 Atl. 375; *State* v. *Long, supra.*

But here it affirmatively appears that the ruling was not made as a matter of discretion. The full Court holds that the question was proper cross-examination, and its exclusion error.

■ Our rule is that error is presumed to be harmless, and, that to be reversible, prejudice must affirmatively appear; (Supreme Court rule 9; *MacDonald* v. *Orton*, 99 Vt. 425, 431, 134 Atl. 599), and so our next inquiry must be whether such is here the situation. It is said in *People* v. *Wilcox*, 245 N. Y. 404, 406, 157 N. E. 509, 510, that what errors on a trial affect substantial rights of the parties is many times a very troublesome question, and that:

"Error is in many instances a relative term. Its seriousness depends upon the nature of the evidence and the strength or weakness of the case. An error in a judge's ruling which would be serious in one case might be ignored as immaterial in another. What effect evidence may have upon the minds of a jury is impossible to determine except as each one of us takes himself as the standard. We all know at times little things sway the balance and move us to a conclusion; even at times cause us to change a rather fixed conviction. At the best, we can only rely upon our reason and our judgment."

It will be readily appreciated that the widest opportunity for cross-examination of the complaining witness was necessary for the respondent in the instant case. She was the only witness to the particular occurrence upon which the indictment was based, and she was, as her testimony amply showed, a young woman of abandoned character, apparently oblivious to all claims of morality and decency. The principal witness who testified in corroboration was another young woman of almost equal depravity. The respondent availed himself of his statutory right, and did not take the stand in his defense. Great latitude was to be allowed in testing the accuracy and veracity of the witness (*Stevens* v. *Beach*, 12 Vt. 585, 587, 36 A. D. 359; *Congdon* v. *Howe Scale Co.*, 66 Vt. 255, 263, 29 Atl. 253), and this included a careful investigation of whatever motive might actuate her in giving her testimony. *Mears* v. *Daniels*, 84 Vt. 91, 98, 78 Atl. 737; *State* v. *Slack*, 69 Vt. 486, 493, 38 Atl. 311; *State* v. *Fournier*, 68 Vt. 262, 270, 35 Atl. 178.

The importance of the matter is rendered even more apparent by certain testimony subsequently appearing. Loyal Stoodley, the father of Irma Stoodley, testified that before her arrest at Bellows Falls he had asked the respondent if there was not some way that he could stop the intimacy between Irma and Barney; and that the respondent had called at his house and in his presence talked with his wife, who told him that Irma was going with Barney, and asked him if he could not stop it in some way, and that the respondent had said that he would do what he could; that the respondent had told him after the proceedings in the Bellows Falls Court, that Irma had been put under his, respondent's charge, to look after and to find a place for her to go to work and that Irma did go to Waterbury about that time; and that Mrs. Stoodley during her last illness said to the respondent, "I shan't probably be here a great while longer," and she asked the respondent,—"If he wouldn't kind of look after Irma."

Thus, there was other evidence sustaining the respondent's claim that his relationship to the girl was of a supervisory nature, sanctioned by her parents. That she testified that she resented it, we have already seen. A majority of the Court holds that the exclusion of the question, bearing as it did upon the strength and extent of a motive on the part of the witness, was prejudicial to the respondent, and a reversal is required.

It appeared without dispute that before the trial, and while the case was under investigation by the State's attorney, Irma Stoodley was brought to Montpelier by an official of the probation department, and was placed in charge of the jailor and his wife. She was not confined in the jail, but lodged at the jailor's house. She was not arrested. She had several interviews with the probation officer, and the prosecuting officials, at the jailor's office, and at the office of the probation department in the state house. She went with them to Warren, and there pointed out the place where the crime is alleged to have been committed. She went to the city court, in Montpelier, in company with her attorney and the State's attorney, there entered a plea of guilty to the crime of adultery with the respondent. She then returned to the jailor's house, where she remained throughout the trial. At the time of giving her testimony, no sentence had been imposed upon her, and she had not then been arrested. Two days after her plea in city court she testified before the grand jury. She testified that none of the officials with whom she talked had told her what she had better do. No proceedings were taken with reference to the violation of the terms of her probation and the impending sentence. Neither the State's attorney nor the probation officer mentioned the matter to her, but she testified that she knew she had violated her probation, and had a sentence hanging over her unless she could get rid of it in some way.

The respondent's counsel said in argument to the jury:

"It appears that this girl although she has pleaded guilty to the indictment, has never been arrested. So far as appears before this court, before this jury, she is free to go about as she likes. Mr. Adams has argued to you at some length that the wards of the State of Vermont must be protected from the public. I ask you, gentlemen of the jury, in God's name, who is going to protect the people of the State of Vermont from this ward of the State? The people of the State of Vermont ask the question, 'What is going to be done with this girl?' The time and place for that question to be answered was when she appeared in court and pleaded guilty. That question hasn't yet been answered."

An objection being made to this argument, the court ruled that there was no evidence tending to show that any promise had been made to the witness, or that she was not to serve the full limit of any punishment that might be given her. Respondent's counsel then claimed the right to argue that there was an "implied understanding" between the State and the witness. The court remarked that there was nothing in the record tending to support this claim, and went on to say:

"The only evidence as to her arrest was what Irma Stoodley stated on her cross-examination. So far as that goes, it is perfectly proper for you to argue it, but when you argue that the State has made any promise to her, there is nothing in this record tending to show it."

Counsel disclaimed the existence of an express promise of immunity, but asked, "Do I understand that the court rules I haven't the right to argue an implied promise?" The Court answered, "On the record, yes," and an exception was saved.

There was no error here. No promise or understanding, express or implied, could be inferred from the facts above stated. And an argument to the effect that the circumstances might have raised, in the mind of the witness, a hope or expectation of leniency, was not prohibited by the ruling of the court.

As tending to show an adulterous disposition on the part of the respondent towards Irma Stoodley, the prosecution introduced evidence of other acts of improper familiarity between the two, before and after the day relied upon. On one occasion the Stoodley girl testified that the respondent took her and another girl named Minnie Rushford riding in his automobile; that they drove upon a wood road in a pine grove near Springfield, and stopped the car; that the respondent gave the two girls some jamaica ginger to drink, and thereafter, on the back seat of the car started to have sexual intercourse with the witness, but, since she was unwell at the time, he desisted before the completion of the act, and thereupon had sexual intercourse with Minnie Rushford on the seat beside the witness. The Rushford girl testified to the same effect.

In referring to this testimony in the charge, the court said:

"And I may say here that the testimony of Minnie Rushford and Irma Stoodley as to what took place between the

respondent and the Rushford girl, if anything, is not material here except as it tends to show an adulterous disposition between the respondent and Miss Stoodley at the time in question.''

To this the respondent excepted on the ground that the charge as worded would give the jury to understand that if this respondent had intercourse with Minnie Rushford, it was evidence of an adulterous disposition which could be taken against him; and that the adulterous disposition which was to be considered was one with the *particeps criminis* named in the indictment.

However the charge was without error in this respect. The respondent is quite right in his contention that the adulterous disposition to be considered was one existing between the respondent and Irma Stoodley. *State* v. *Kimball,* 74 Vt. 225, 229, 52 Atl. 430; *State* v. *Bridgman,* 49 Vt. 202, 210, 24 A. R. 124; *State* v. *Kelley,* 65 Vt. 531, 536, 27 Atl. 203, 36 A. S. R. 884; *State* v. *Smalley,* 50 Vt. 736, 750. But this disposition may be evidenced in various ways. The court in this connection, and immediately after the language excepted to, correctly charged that the offense of adultery cannot ordinarily be committed until the restraints of natural modesty and the safeguards of common deportment and conventionality have been overcome by gradual approaches and the relations between the parties changed from those usually existing between the two sexes to the most intimate; that it was incumbent upon the State to overcome the presumption that these restraints and safeguards had not been broken over; that the true relation between the parties in this respect was very material to be shown; and that the previous or subsequent familiarity or intimacy between the parties, if found to exist, was a circumstance bearing on the probability of the commission of the crime charged, and tended to illustrate the relations of the parties at the time the alleged act took place. See *State* v. *Bridgman,* 49 Vt. 202, 210, 211, 24 A. R. 124.

Certainly an act of sexual intercourse committed under the circumstances here asserted by the witness in the immediate presence of a third person of the opposite sex implies a degree of intimacy with such third person altogether suggestive of the existence of an even closer and more indelicate relation. If believed, it may be considered by the jury as a circumstance tend-

ing to show the breaking down of the restraints of modesty and conventionality between the parties.

Adultery, from the natural secrecy which attends the commission of the offense, is usually to be proved by circumstantial evidence (*State* v. *Kimball,* 74 Vt. 223, 229, 52 Atl. 430; *Taft* v. *Taft,* 80 Vt. 256, 257, 67 Atl. 703, 130 A. S. R. 984, 12 Ann. Cas. 959) ; and a wide discretion exists in the admission of evidence of even comparatively insignificant instances of intimacy between the parties. The only qualification is that the circumstances must be such as to lead the guarded discretion of a reasonable and just man to the conclusion that the offense has been committed. *State* v. *Kimball,* 74 Vt. 223, 229, 52 Atl. 430; *Thayer* v. *Thayer,* 101 Mass. 111, 113, 100 A. D. 110. We think that this evidence, taken in connection with the other testimony upon the point, is well within the rule.

Referring to Irma Stoodley, the court said in the charge:

"Also if you find from the evidence that her character for chastity was bad, you may consider it with the other evidence as tending to render the adulterous act here alleged more probable. This evidence tending to show the bad character of Irma for chastity was not received, and is not to be considered as tending to impeach her as a witness here, but only for the purpose we have indicated. You will so consider it and apply it."

The respondent excepted, on the ground that the evidence could not be used for the purpose indicated because it was admitted for a different purpose, *viz.,* as bearing upon the girl's motive for testifying as she had done.

The ground of error briefed is that there was no competent evidence of her unchaste character, because that could be proved only by evidence of reputation, as to which nothing appeared on trial. Since this ground was not presented on trial, we do not consider it. *State* v. *Williams,* 94 Vt. 423, 443, 111 Atl. 701; *Capital Garage Co.* v. *Powell,* 97 Vt. 204, 210, 211, 122 Atl. 423.; *McAllister* v. *Benjamin,* 96 Vt. 475, 490, 121 Atl. 263; *Grapes* v. *Willoughby,* 93 Vt. 458, 461, 108 Atl. 421. The ground stated on trial is not relied upon in the opening brief filed by the respondent. This would ordinarily amount to a waiver of it. *Symes* v. *Fletcher,* 95 Vt. 431, 438, 115 Atl. 502. It is mentioned in the respondent's reply brief, but all that is

therein said concerning it is practically a repetition of what was stated in taking the exception. This is inadequate briefing, and we do not consider the question. *Dumont* v. *Cromie,* 99 Vt. 208, 215, 130 Atl. 679; *McAllister* v. *Benjamin,* 96 Vt. 475, 497, 121 Atl. 263; *McClary* v. *Hubbard,* 97 Vt. 222, 243, 122 Atl. 469; *State* v. *Wood,* 99 Vt. 490, 134 Atl. 697, 700, 48 A. L. R. 985.

The respondent excepted to the failure of the court to charge that it was the duty of the jury to consider the situation of the witness Irma Stoodley and the effect that the impending sentence upon her may have had to cause her to give testimony against the respondent in the hope of finding favor with the prosecuting officers of the State, and thereby securing a lighter sentence or probation.

While it is the duty of the court, without request, to charge upon all the substantial issues in the case, it is not bound to make every conceivable comment upon the evidence and the weight of it. *Ryder* v. *Vt. Last Block Co.,* 91 Vt. 158, 167, 99 Atl. 733. To the same effect are *State* v. *Hier,* 78 Vt. 488, 492, 63 Atl. 877, and *State* v. *Potter and wife,* 42 Vt. 495, 506, where it is said that the failure of the court to caution the jury as to the weight to be given the testimony of an accomplice is not error, this rule being one of practice and not of law. This exception is not sustained.

The respondent also excepted to the failure of the court to charge that, when the witness Irma Stoodley testified, she was doing so under such circumstances as would justify the jury in inquiring whether there was an implied promise of favor extended to her by the State. This is the same question that was raised by the exception taken during the argument of respondent's counsel. What we have said in that connection is applicable here. There was no error in this respect.

The respondent has brought a petition for a new trial, based upon newly discovered evidence. In view of the disposition which must be made of this case, it is not necessary for us to consider it, and it is dismissed, without costs.

*Judgment reversed. Conviction and sentence set aside, and cause remanded. Petition for a new trial dismissed, without costs.*