**UNITED STATES of America,**
**v.**
**Frank P. LAURELLI, Appellant.**
**Nos. 13540, 13541.**

United States Court of Appeals
Third Circuit.

Argued June 22, 1961.

Decided Aug. 9, 1961.

Rehearing Denied Sept. 6, 1961.

---

G. Fred DiBona, Philadelphia, Pa., for appellant.

Oliver Dibble, Washington, D. C. (Herbert J. Miller, Jr., Asst. Atty. Gen., Daniel H. Jenkins, U. S. Atty., M. D. Pennsylvania, Scranton, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal from judgments of conviction rendered in the Middle District of Pennsylvania. The defendant was indicted and convicted on two counts. One of them charges perjury in the testimony given by the defendant before the Grand Jury for the Middle District of Pennsylvania. 18 U.S.C. § 1621. The other count charges an offer to bribe alleging that the defendant offered to pay to one Paul M. Judge, a Government inspector, $20.00 every Friday if he would not insist upon performance by the defendant and the workmen under him of their obligations upon a contract having to do with the construction of the United States Signal Depot at Tobyhanna, Pennsylvania. 18 U.S.C. § 201. The defendant was found guilty on both counts and sentenced to imprisonment for a year and a day in both, the sentences to run concurrently.

The defendant was very ably represented both at the trial and upon appeal by the same counsel. The suggestion that a fair trial was not given the accused was pressed with vigor. The

result of the argument has been a careful examination of the entire transcript, not limited to the appendices supplied by the parties. The conclusion is that the defendant had a completely fair trial and that no reversible error was committed.

The chief law point urged in this appeal is that testimony was presented of subsequent attempts by the defendant to bribe one O'Donnell who was also connected with work on the same project. There is a suggestion that O'Donnell was a surprise witness. This is not the fact, however. Prior to his opening address to the jury, Government counsel informed defendant's counsel that he intended to call O'Donnell as a witness and to mention that fact in his opening address. Defendant's counsel notified the trial judge that he was going to object to the testimony and did so but not on the grounds of surprise. O'Donnell testified that several months after the alleged attempted bribery by the defendant he, the defendant, on at least two occasions endeavored to offer a substantial bribe if O'Donnell would not insist upon compliance with the contract.

█ It is to be noted that the alleged subsequent offenses were the very same type of thing for which the defendant was accused in the bribery charge. The testimony was admissible, especially under these circumstances. The alleged offense was the same; the project was the same. We have held in a number of cases that evidence of similar acts subsequent to the offense for which one is being tried is admissible, "if relevant for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime."[1]

█ The evidence tended to show defendant's intent. It also tended to show a pattern of a type familiar in some decisions involving adultery.[2]

█ The course of the trial showed very careful conduct on the part of the trial judge to preserve a complete air of fairness throughout. The testimony of the principal witness, Judge, to whom the alleged bribe was offered, was corroborated by another witness who was a clerk in the same office and who overheard the conversation between the defendant and Judge. There was testimony to the effect that Judge reported the matter to a man named Carman who was his superior on the job. Carman was called as a witness. The prosecuting attorney had not taken the pains to talk to him prior to the trial to learn what his testimony would be. The witness presented a very halting story. The judge asked counsel and Carman to meet with him in chambers and excused the jury for a few minutes. There is a stenographic record of what was said there. The judge simply told the witness if he remembered something he was to say it; if he did not remember it, he was to say so. There is nothing improper in this and the suggestion that the jury must have looked askance at this consultation between lawyers, judge and witness is, we think, purely fanciful.

█ Criticism is also made to the effect that the court's charge spent 30 minutes reviewing the Government's testimony and three minutes reviewing that of the defendant. This statement is not fair to the charge. The court did explain carefully what the problems were which the jury had to face. He outlined the charges on both counts and read to the jury the statutes applicable thereto. He set out the story of the chief Government witnesses and pointed out that the

1. United States v. Stirone, 3 Cir., 1958, 262 F.2d 571, 576, reversed on other grounds 1960, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252. See United States v. Prince, 3 Cir., 1959, 264 F.2d 850; United States v. Alker, 3 Cir., 1958, 260 F.2d 135, certiorari denied 1959, 359 U.S. 906, 79 S.Ct. 579, 3 L.Ed.2d 571. See also Waller v. United States, 9 Cir., 1949, 177 F.2d 171. But see Witters v. United States, 1939, 70 App.D.C. 316, 106 F.2d 837, 125 A.L.R. 1031, which is clearly distinguished in Waller v. United States, supra.

2. See, e. g., Bickley v. Bickley, 1903, 136 Ala. 548, 34 So. 946; Thayer v. Thayer, 1931, 277 Mass. 256, 178 N.E. 730; State v. Davis, 1948, 229 N.C. 386, 50 S.E.2d 37; State v. Fairbanks, 1928, 101 Vt. 30, 139 A. 918.

defendant's witnesses had denied what the Government's witnesses said. At the request of defendant's counsel he elaborated the position of the defense after he had finished his main charge. We have no doubt that this jury knew just exactly what it had to decide.

 The suggestion is made that the perjury charge is not substantiated. It is, of course, hornbook law that a charge of perjury must be corroborated either by an individual witness or surrounding circumstances. But the story which the defendant told in court and before the Grand Jury was completely contrary to what the Government's witnesses had said. Somebody must have told an untruth. The attempt to distinguish in nomenclature between T beams, bulb tees, subpurlins, tees, tee rails, tee irons, tee bars and tee steels suggests confusion which does not appear as one reads the testimony of the witnesses at the trial.[3] There was a conflict in testimony. The jury resolved it by its verdict. The defendant had a fair trial.

It is unfortunate that this case has dragged so long. The alleged bribery offense took place in March of 1953. Testimony before the Grand Jury was in May of 1956. The perjury indictment was returned a few days later. The bribery indictment came in December of that year. The next March (1957) motions to dismiss the indictments were filed.

The case came to trial on September 17, 1957. There were motions for judgments of acquittal or, in the alternative, for a new trial. These motions were not argued until December 15, 1958. The opinion of the court denying the motions bears date of August 19, 1960. Sentences were imposed January 12, 1961, and notice of appeal was filed on January 19, 1961.

The judgment of the district court will be affirmed.

KALODNER, Circuit Judge (dissenting).

I dissent from the majority's holding that the Government's testimony of unrelated bribery attempts by the defendant, in one instance eleven months and in the other fourteen or fifteen months, after the bribery attempt charged in the indictment, was admissible. The admission of testimony relating to the subsequent bribery attempts constituted prejudicial error requiring reversal and a new trial.

The indictment in the count relating to bribery, charged that the defendant attempted to bribe one Paul M. Judge "on a day in March, 1953". The Government, during the trial, adduced testimony that the defendant attempted to bribe one John J. O'Donnell in February, 1954 (11 months after March, 1953) and again "several months" later (14 or 15 months after March, 1953). The majority, it must be noted, treated the subsequent alleged bribery attempts as having been committed "several months" after March, 1953—the critical period charged in the indictment.

In United States v. Stirone, 3 Cir., 1959, 262 F.2d 571, 576,[1] we expressed

---

3. Defendant's counsel places great reliance on the fact that several questions on which the perjury indictment rests dealt with "T" steel *supports*. He maintains that the only offers with which the defendant is charged had to do with the "T" steels themselves and not the supports on which they rested. Even if we were to grant this contention, it overlooks the fact that one of the questions asked was as follows:

"Q. You want this Grand Jury to understand, that no such conversation, either in those words, or words to that effect, or in substance, like that, was

ever said by you to Paul M. Judge, the Inspector? A. That is right."

The jury certainly could reasonably conclude that this question directed the defendant's attention to the "T" steels themselves. We do not feel justified in setting aside the jury's verdict on the basis of a highly technical argument of this nature when there is a perfectly reasonable solution which the jury could have adopted to the problem of whether the defendant knowingly perjured himself in answering this question.

1. Reversed on other grounds, 1960, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252.

our agreement with "the general rule * * * that evidence of other offenses is inadmissible in a criminal prosecution for a particular crime", except "to prove some specific fact or issue such as intent, plan, scheme or design", and further stated:

"Evidence of other offenses may be received if relevant *for any other purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime.*" (Emphasis supplied.)

The majority holds that the evidence of bribery attempts "tended to show defendant's intent" and that "It also tended to show a pattern of a type familiar in some decisions involving adultery". Here, however, the defendant's "intent" was not placed in issue in this case since he denied, lock, stock and barrel, that he had attempted to bribe Judge in March, 1953, and thus the evidence of the subsequent bribery attempts was not "relevant" to establish "intent". The sole purpose of the Government's testimony then was "to show a mere propensity or disposition on the part of the defendant to commit the crime [attempted bribery]" and it comes squarely within the interdiction stated in Stirone.

In Stirone, it must be noted, the crime charged was extortion and the defendant had put "intent" at issue; there the defendant admitted having received money but said it was in the course of a business transaction with the one who paid it but denied any intent to "extort". Under these facts we held that evidence was admissible, on rebuttal, to show that the defendant had attempted to extort money from another person under the same kind of threat (of reprisals) one month after he had received the money figuring in his indictment.

Similarly, in United States v. Prince, 3 Cir., 1959, 264 F.2d 850, cited by the majority, we held admissible, on the authority of Stirone, evidence that the defendant had figured in another transaction relating to the sale of narcotics with the same federal narcotics agent eighteen days after the narcotics offense charged in his indictment. A period of eighteen days is one thing; eleven to fifteen months is another.

In Waller v. United States, 9 Cir., 1949, 177 F.2d 171, cited by the majority, the defendant was charged with converting potatoes belonging to the Commodity Credit Corporation to his own use on August 22–25, 1948. Evidence of similar conduct on August 25, 1948 was held to be admissible, the Court stating (at page 175):

"Under familiar principles, relevant evidence of other offenses or acts, if similar and *not too remote,* may be admissible *on the issue of fraudulent intent, if such intent* is a constituent and *disputed* element of the crime * * * charged." (Emphasis supplied.)

As earlier stated, *intent* was not at issue in this case, and again, the second act charged was virtually simultaneous with that embraced in the indictment.

In United States v. Alker, 3 Cir., 1958, 260 F.2d 135, certiorari denied 1959, 359 U.S. 906, 79 S.Ct. 579, 3 L.Ed.2d 571, cited by the majority, evidence that defendant, in filing his income tax return for 1947, had falsely stated that he had filed a return for 1946, when in fact he had not, was held admissible. Alker was indicted for willful evasion of income tax for 1947 and subsequent years. Alker is inapposite. First, the misstatement was a part of the 1947 tax return concerned in the indictment. Second, the misstatement was also relevant as an element of the crime charged: willfulness; even so, we said that Alker's failure to file a return for 1946 could not be used to show willfulness in 1947 but could only show that Alker lied in 1947 when he said that he had filed in 1946. Thus the falsity which the government was allowed to show was concurrent with the crime charged, not 11 and 15 months subsequent.

The "decisions involving adultery", referred to by the majority are inapposite here, as their content discloses.

For the reasons stated I would reverse the judgment of the district court and remand with instructions to grant a new trial.