STATE v. JAMES THOMAS.

*Evidence—Witness—Burden of Proof—Judge's Charge.*

1. If a person charged with a crime voluntarily offers himself as a witness in his own behalf he waives his constitutional privilege of refusing to answer a question because the answer may tend to criminate him.

2. Upon the trial of an indictment for murder, the killing being admitted or proven, it is not error for the Court to charge the jury that, if the testimony does not satisfy them that the offence is manslaughter, it is their duty to convict of murder.

(*State* v. *Efler*, 85 N. C., 585; *State* v. *Garrett*, Busb., 357; *State* v. *Patterson*, 2 Ired., 346; *State* v. *Murray*, 63 N. C., 31; *State* v. *March*, 1 Jones, 526; *State* v. *Bowman*, 80 N. C., 432; *State* v. *Brittain*, 89 N. C., 481; *State* v. *Jones*, 87 N. C., 547; *State* v. *Neville*, 6 Jones, 423; *State* v. *Boon*, 82 N. C., 637; *Rencher* v. *Wynne*, 86 N. C., 268, cited).

This was an INDICTMENT for murder, tried before *Boykin, Judge,* at Fall Term, 1887, of HENDERSON Superior Court.

There was a verdict of guilty of murder, and from the judgment thereupon pronounced against him, the prisoner appealed.

The prisoner is charged with the crime of murder committed upon the body of one Joseph R. Barnett.

Upon the trial the prisoner was examined as a witness on his own behalf, and gave evidence tending to reduce the crime to the grade of manslaughter.

Upon his cross-examination the Solicitor, prosecuting for the State, put to him the following interrogatory:

"1. Were you accused of the commission of any offence in Alabama."

The prisoner, who had recently removed from that State to this, hesitated to make answer until he was instructed by his counsel to do so, and then said, "Yes."

Thereupon the Solicitor propounded this further question:

"2. What offence were you accused of committing in that State?"

The prisoner objected to being required to answer the question for the reasons:

1st. That the answer would tend to criminate him;

2d. For that it was irrelevant; and

3d. For that he cannot be compelled to give evidence against himself.

The Court overruled the objection, and the prisoner, in response, said he had been accused of murder in Alabama, and the prisoner excepted.

In admitting the testimony the Judge remarked, and repeated the remark in the charge to the jury, that the evidence could only be considered as affecting the credibility of the prisoner as a witness in the cause.

The prisoner's testimony tended to reduce the grade of the homicide to that of manslaughter, while he admitted the killing to have been done with a pistol.

The Court charged the jury that, "the homicide being admitted to have been effected by the use of a deadly weapon, the prisoner must satisfy you that it was committed under circumstances reducing the crime to manslaughter; and in determining the degree of the offence, all the evidence, as well that produced by the State as that produced by the prisoner, must be considered."

The counsel for the prisoner asked an instruction, to the effect that the case of the prisoner might rest upon the evi-

dence coming from the State, and find matter there in extenuation or mitigation of his offence.

To this suggestion the Judge replied: "I have already instructed the jury that, in forming a conclusion as to whether the prisoner be guilty of murder or manslaughter, they must consider all the evidence in the case. The prisoner is permitted to rely upon acts, circumstances and declarations proved by the State, in order to acquit himself of the more serious offence, and I now again so charge the jury."

Prisoner's counsel excepted to the instructions, for that, in laying down the rule as to the burden of proof, the Judge "did not in terms tell the jury that matters in mitigation might be shown in the testimony offered against the prisoner, but left this to be inferred from the language used in the request and in the charge in response."

After the retirement of the jury for deliberation and to make up their verdict, they returned into Court and inquired: "If the jury are in doubt as to the truth of the testimony of any witness is the prisoner entitled to it?"

The Judge replied to the inquiry, addressing the jury as follows: "You have been informed that the prisoner's admission of the killing with a deadly weapon imposes on him the duty of satisfying you that the act is manslaugter. In determining whether it be manslaughter or murder it is proper for you to consider the character of the witnesses, both for the State and the defendant; their interest in the result; their demeanor on the stand; the relationship of the witnesses for the State to the deceased—for the purpose of ascertaining whether they are credible or not. Carefully analyze all the testimony, scrutinize and compare the statements of the different witnesses, ascertain the facts from the testimony, apply the facts to the law the Court has announced; and if, upon all the evidence, after attaching such weight and importance to the testimony of each witness as in your opinion it merits, you are not satisfied that the of-

fence is manslaughter, convict of murder; if so satisfied, convict of manslaughter, since the State is relieved of the burden of introducing any testimony upon such admission, and the *onus* as to all matters is on the defendant." The jurors expressed their content and retired.

The prisoner again excepted, because the Court did not say to the jury that the prisoner was entitled to the benefit of the doubt.

The Court had previously explained the law of homicide as applicable to the different aspects of the case, as presented in the evidence, and to this there was no exception.

*The Attorney General,* for the State.

*Messrs. J. C. L. Gudger* and *G. S. Ferguson,* for the defendant.

SMITH, C. J., (after stating the case). 1. The first objection to be considered is to the compelling the prisoner to tell with what crime he was charged before removing from Alabama.

When a person on trial for a criminal offence shall avail himself of the right conferred by the Act of 1881, (*The Code,* § 1353,) to become a witness on his own behalf, he occupies, as such, the same position that any other witness would, and exposes himself to the same discrediting and impeaching evidence. *State* v. *Efler,* 85 N. C., 585. This results from the necessity of ascertaining the value and weight to be given to his testimony by the jury; and it is certainly a material inquiry whether the witness is entitled to credit and deserving their confidence in the truthfulness of his statements.

In the absence of direct rulings on this point it would seem that a question ought not to be allowed to be put to an involuntary witness not a party to the cause, the answer to which would criminate, so that the refusal to answer, and the inferences to be drawn from it, would be almost, if not quite, as prejudicial and disparaging as a direct and affirma-

tive reply. In the language of BATTLE, J.: "It is manifest that the only mode by which a complete protection can be afforded to the witness is to prevent the question from being put at all." *State* v. *Garrett,* Busb., 357.

But the ruling in this Court has been otherwise, and in the case cited, the refusal of the witness to answer the inquiry, "have you not been indicted, convicted and whipped in the County Court of Warren for stealing," was allowed to be commented on before the jury to the discredit of the witness. As the disparaging question may be asked, and a refusal to answer can be used to discredit, the Judge, in the opinion from which we have quoted, adds: "We are inclined to think with the very eminent Judges who decided the *State* v. *Patterson,* 2 Ired., 346, that it follows as a necessary consequence that the *witness is bound to answer.*"

The testimony sought to be elicited in this case was disparaging only, and would not expose the witness to the perils of a criminal prosecution, if true, for that is assumed to have already taken place.

In the more recent case of *State* v. *Murray,* 63 N. C., 31, which was on an indictment for rape, the prosecutrix was asked if she had not been delivered of a bastard child and had had sexual intercourse with other men?" and the Judge below would not allow the question to be put. Upon appeal, PEARSON, C. J., speaking for the Court, declared this to be error. But in *State* v. *Marsh,* 1 Ired., 526, a witness was asked if he had not committed wilful and corrupt perjury in Georgia by swearing that he had not brought negroes into the State, and this question was propounded to impeach the credibility of the witness. It was ruled out, and upon appeal, BATTLE, J., delivering the opinion, thus disposes of the exception: "If the witness had been asked whether he had or had not committed perjury in this State, he certainly would have been protected from answering what might have exposed him to a *criminal prosecution in our Courts,* and, in such

case, we are inclined to think that the question *ought not to be allowed to be put at all.* But our Courts, in administering justice among their suitors, will not notice the criminal laws of another State or country, so far as to protect a witness from being asked if he had not violated them. We are of the opinion, therefore, that the question was improperly ruled out, and that the defendant is entitled to the benefit of another trial."

This ruling proceeds upon the principle that self-criminating evidence cannot be drawn from the witness, against his will, when it relates to offences committed within the jurisdiction of the State; but the protection does not extend to such as are committed beyond its jurisdiction and which violate the laws of another State or country. The crime of perjury exists under the common law, and is recognized as such, in like manner as homicide.

This case is not distinguishable in principle from that before us. We prefer, however, to put our decision upon other ground—more satisfactory to our own minds and well sustained by adjudications in other Courts.

A person charged with crime may, "at his own request, but not otherwise," become a witness on his own behalf upon the trial, and his failure to claim the privilege and offer his own testimony, is not permitted to become the subject of comment to his prejudice by counsel for the prosecution. *The Code*, §1353. He is, when he chooses to testify, bound to disclose all he knows, whether criminating or disparaging to himself, as does an ordinary witness when testifying on matters of which he might claim the privilege of being silent, binds himself to tell the whole truth and all that he knows of the transaction, to part of which only he has testified. In either such case the privilege is waived.

In *McGarry* v. *The People*, 2 Lansing (N. Y.) 227–233, it is said of a party testifying: "It was not compelling him" to be a witness against himself, within Art. I, sec. 6, of the

Constitution of this State. He was a voluntary witness under the provisions of ch. 678 of the Laws of 1869. He was not only a volunteer, but had taken the necessary oath to enable him to testify, "to tell the truth, the whole truth and nothing but the truth," upon the whole issue of traverse between himself and the people. He could not have been compelled to give evidence at all; but when he made himself a witness under the privilege conferred upon him by this statute, he waived the constitutional protection in his favor and subjected himself to the peril of being examined as to any and every matter pertinent to the issue." To the same effect is *Burdick* v. *The People*, 58 Barbour, 51–58.

In *Brandon* v. *The People*, 42 N. Y. Court of Appeals, upon the trial of the accused for larceny she was asked: "Have you ever been arrested before for theft?" An objection to the testimony was overruled and she answered in the affirmative.

In *Commonwealth* v. *Lannan*, 13 Allen (Mass.) 563–569, Hoar, J., uses this language: "The defendant, by offering himself as a witness, waives his right to object to any question pertinent to the issue on the ground that the *answer may tend to criminate him*. He is not required to testify, and may protect himself by not doing so," citing *Commonwealth* v. *Price*, 10 Gray, 472.

Again, says BIGELOW, Ch. J., in *Commonwealth* v. *Mullen*, 97 Mass., 545–546: "If he offers himself as a witness he waives his constitutional privilege of refusing to furnish evidence against himself, and may be interrogated as a general witness in the cause."

"By taking the stand as a witness," to use the words of COBB, J., "he waived his constitutional privilege of refusing to furnish evidence against himself, and subjected himself to be treated as a witness." *Commonwealth* v. *Morgan*, 107 Mass., 199–205. These references, in connection with *State* v. *Marsh*, *supra*, disposes of the exception.

2. We do not find anything in the charge of the Court to warrant the exceptions taken to it. So far as it relates to the burden of proof in reducing the grade of the homicide, when there had been a wilful killing, the charge is in accord with the law as declared in *State* v. *Bowman*, 80 N. C., 432, and *State* v. *Brittain*, 89 N. C., 481, and the series of cases cited by Mr. Justice Ashe in the last.

The presiding Judge, as the case on appeal states, while not setting out in words the charge upon the point, " explained to the jury the difference between murder and manslaughter, and applied *the rule of law so announced to the evidence in the case*," and to this no exception is taken. The charge is not, therefore, obnoxious to the complaint based upon the ruling in *State* v. *Jones*, 87 N. C., 547, when the Court declared the law in general terms without adapting it to the different aspects of the evidence, as required by *The Code*, §412. So he did direct the jury to find of what crime the prisoner was guilty, from an examination of all the evidence, and, of course, if that of the State showed the mitigating circumstances, it would be as protective as if proved by the prisoner. He was not bound by the very words of the introduction, if correct in itself, when it was substantially given. *State* v. *Neville*, 6 Jones, 423; *State* v. *Boon*, 82 N. C., 637; *Rencher* v. *Wynne*, 86 N. C., 268.

The exception, based upon what transpired on the return of the jury, when information was asked whether, in case of doubt of the testimony of any witness, the prisoner was entitled to it, is also untenable. The inquiry, in form, is indefinite in its terms, but assuming it to refer to a supposed defect in the inculpating evidence, the answer from the Judge seems to meet it, and was accepted by the jurors as satisfactory. It was virtually a repetition of what had been before said, that the homicide being conceded to have been committed with a deadly weapon, and intentionally, the law pronounced it murder, unless, upon the

evidence, it should be reduced to a lower grade, and that the doubt as to whether this was sufficiently proved was not to be resolved in the prisoner's favor.

The case has been ably argued for the prisoner and the defence considered with the consideration due to it. It must be declared there is no error, and the judgment affirmed.

Affirmed.