*In re* WATSON.

1. CRIMINAL LAW—INVESTIGATION OF CRIME—JURISDICTION OF ONE-
MAN GRAND JURY — CIRCUIT JUDGES — RECORDER'S COURT OF
DETROIT.

Notwithstanding statute giving recorder's court of Detroit exclu-
sive jurisdiction as to prosecution of crimes within the city of
Detroit, a circuit judge, sitting as a one-man grand jury, is
empowered to investigate gambling in Wayne county in
which such city is located and may require any person who
may be able to give any material evidence respecting such
offense to attend as a witness and answer such questions as
the judge may require concerning any violation of the law
about which he may be questioned regardless of whether
the violation occurred within the city or elsewhere in the
county (3 Comp. Laws 1929, §§ 16300, 17217).

2. SAME—ONE-MAN GRAND JURY—PROSECUTING ATTORNEYS—AS-
SISTANT ATTORNEY GENERAL.

In one-man grand jury proceeding to investigate gambling in
Wayne county, the fact that an assistant attorney general,
instead of the prosecuting attorney, made motion in writing
requiring an answer by a witness did not result in a defect in
the proceedings (3 Comp. Laws 1929, § 17220).

3. ATTORNEY GENERAL—INTERVENTION IN CRIMINAL PROCEEDINGS—
SUPERVISION OF PROSECUTING ATTORNEYS.

The attorney general may intervene in any criminal proceed-
ing in the State and has supervision of all prosecuting attor-
neys (1 Comp. Laws 1929, §§ 176, 178).

4. SAME—ASSISTANTS ATTORNEY GENERAL.

Assistants appointed by the attorney general may, when desig-
nated, appear for the State in any action, with the same
powers and in like capacity as the attorney general (1 Comp.
Laws 1929, § 183).

5. WITNESSES—SELF-INCRIMINATION—CONSTITUTIONAL LAW.

The constitutional privilege against self-incrimination may not
be supplanted by a statute which merely bars the introduc-

tion in evidence of a witness's testimony, leaving him vulnerable to prosecution and conviction by means disclosed by such testimony (U. S. Const. am. 5; Mich. Const. 1908, art. 2, § 16).

6. SAME—SELF-INCRIMINATION—CONSTITUTIONAL LAW — STATUTORY IMMUNITY.
   Immunity cannot supplant the constitutional privilege so long as the witness remains liable to prosecution criminally for any matters or causes in respect of which he was exempt, or to which his testimony related (U. S. Const. am. 5; Mich. Const. 1908, art. 2, § 16).

7. SAME—IMMUNITY—SELF-INCRIMINATION.
   Where immunity accorded a witness is sufficient, he is required to answer even though such answers are self-incriminating (U. S. Const. am. 5; Mich. Const. 1908, art. 2, § 16).

8. SAME—SELF-INCRIMINATION—CONSTRUCTION OF CONSTITUTION.
   The constitutional provision that no person shall be compelled in any criminal case to be a witness against himself should be construed to effect a practical and beneficial purpose (U. S. Const. am. 5; Mich. Const. 1908, art. 2, § 16).

9. SAME—SELF-INCRIMINATION—CONSTITUTIONAL LAW—PROTECTION OF WITNESSES—ADMINISTRATION OF CRIMINAL LAW.
   The constitutional provision that no person shall be compelled in any criminal case to be a witness against himself does not require protection of witnesses against every possible detriment which might happen to them from their testimony, nor that the administration of criminal justice be unduly impeded, hindered or obstructed (U. S. Const. am. 5; Mich. Const. 1908, art. 2, § 16).

10. CONSTITUTIONAL LAW—STATUTES.
    A statute should be upheld if it can be construed in harmony with the fundamental law.

11. SAME—STATUTES RECONCILED TO CONSTITUTION.
    Instead of seeking excuses for holding a law to be void by reason of conflict with the Constitution, or with certain supposed fundamental principles of civil liberty, the effort should be to reconcile them, if possible, and not to hold the law invalid unless the opposition between the Constitution and the law be such that the court feels a clear and strong conviction of their incompatibility with each other.

12. WITNESSES—SELF-INCRIMINATION—IMMUNITY.

The immunity offered a witness must be as broad as the constitutional protection against self-incrimination for which it is sought to be substituted (U. S. Const. am. 5; Mich. Const. 1908, art. 2, § 16).

13. SAME—TEST OF IMMUNITY.

The test of whether the immunity offered a witness is as broad as the constitutional protection against self-incrimination for which it is sought to be substituted is whether the immunity becomes a complete substitute for the constitutional privilege (U. S. Const. am. 5; Mich. Const. 1908, art. 2, § 16).

14. SAME—IMMUNITY AGAINST FUTURE PROSECUTIONS MUST BE ABSOLUTE.

To be valid the grant of immunity offered a witness as a substitute for his constitutional privilege as to self-incrimination must be absolute against any future prosecution for the offense to which the question relates (U. S. Const. am. 5; Mich. Const. 1908, art. 2, § 16).

15. SAME—VALIDITY OF IMMUNITY AS SUBSTITUTE FOR CONSTITUTIONAL PROTECTION FROM SELF-INCRIMINATION.

In determining validity of immunity offered as a substitution for the constitutional protection against self-incrimination, the mere prohibition of the introduction in evidence, or the use in any manner, of the discovery or evidence obtained from the party or witness affords no protection against that use of compelled testimony which consists in gaining therefrom a knowledge of the details of a crime and the sources of information which may supply other means of convicting the witness or party (U. S. Const. am. 5; Mich. Const. 1908, art. 2, § 16).

16. SAME—ONE-MAN GRAND JURY—IMMUNITY FROM PROSECUTING FOR SELF-INCRIMINATING TESTIMONY—CONTEMPT.

In one-man grand jury proceeding conducted by circuit judge to investigate gambling in Wayne county and possible protection thereof by county officials where witness was required to answer a question under a statute providing that he should not ''thereafter be prosecuted for any offense concerning which such answers may have tended to incriminate him,'' he was thereby granted a complete immunity as broad as the constitutional provision securing the privilege against self-incrimination, hence was required to answer the question in

order not to be subject to contempt of court (U. S. Const.
am. 5; Mich. Const. 1908, art. 2, § 16; 3 Comp. Laws 1929,
§§ 17217, 17220).

17. SAME—SELF-INCRIMINATION—MAINTENANCE OF PROTECTION.

The ancient privilege of a witness against being required to
give self-incriminating testimony, now embodied in our Con-
stitutions, should be maintained against limitations that tend
to make it ineffectual, futile, and subversive of the spirit
and letter of the Bill of Rights (U. S. Const. ams. 5, 14;
Mich. Const. 1908, art. 2, § 16).

18. SAME—CONSTITUTIONAL LAW—PROBABILITY OF PROSECUTION.

The constitutional privilege against self-incrimination exoner-
ates from disclosure whenever there is a probability of prose-
cution in State or Federal jurisdictions (U. S. Const. ams. 5,
14; Mich. Const. 1908, art. 2, § 16).

19. SAME—IMMUNITY FROM STATE OR FEDERAL PROSECUTION.

To overcome the constitutional privilege against self-incrimina-
tion, the extent of the immunity would have to be of such a
nature that it would protect, not only against State prosecu-
tion, but also against any reasonably probable Federal prosecu-
tion (U. S. Const. ams. 5, 14; Mich. Const. 1908, art. 2,
§ 16).

20. SAME—MISUSE OF PRIVILEGE OR IMMUNITY.

The claim of the privilege against self-incrimination in the face
of a State immunity statute cannot be used as a subterfuge
or pretense to refuse to answer in proceedings to detect or
suppress crime but neither can the grant of immunity be used
to compel answers that will lead straight to Federal prosecu-
tion; hence whenever the danger of prosecution for a Federal
offense is substantial and imminent as a result of disclosures
to be made under a grant of immunity by the State, such
immunity is insufficient to overcome the privilege against self-
incrimination (U. S. Const. ams. 5, 14; Mich. Const. 1908,
art. 2, § 16).

21. SAME—PURPOSE OF CONSTITUTIONAL PRIVILEGE AGAINST SELF-
INCRIMINATION.

The constitutional privilege against self-incrimination is satis-
fied if the witness cannot be prosecuted as a result of his
answers, and it is not designed to aid the witness in vindicat-
ing his character but to protect him against being compelled
to furnish evidence to convict him of a criminal charge (U. S.
Const. ams. 5, 14; Mich. Const. 1908, art. 2, § 16).

22. SAME—ONE-MAN GRAND JURY—CONSTITUTIONAL LAW—SELF-
INCRIMINATION — IMMUNITY FROM PROSECUTION ON EXISTING
CHARGE.

With complete immunity against prosecution by the State for
any offense to which answers of witness in one-man grand
jury proceedings relate, his constitutional right against self-
incrimination is not endangered because he happens to be
charged with an offense at the time of questioning (U. S.
Const. ams. 5, 14; Mich. Const. 1908, art. 2, § 16).

23. SAME—STATUTES—CONSTITUTIONAL LAW—CONTEMPT—SELF-IN-
CRIMINATION.

Statute providing that a person may be compelled to answer
self-incriminating questions under penalty for contempt but
not thereafter prosecuted for any offense concerning which
such answers may have tended to incriminate him does not
infringe any of the witness's rights or privileges under the
Bill of Rights, including provision that no person shall be
compelled in any criminal case to be a witness against him-
self (U. S. Const. am. 5; Mich. Const. 1908, art. 2, § 16; 3
Comp. Laws 1929, § 17220).

SHARPE, CHANDLER, and WIEST, JJ., dissenting.

Appeal from Wayne; Ferguson (Homer), J. Sub-
mitted April 5, 1940. (Docket No. 132, Calendar No.
41,137.) Decided April 19, 1940.

In the matter of Everett I. Watson. Everett I.
Watson reviews an order adjudging him guilty of
contempt of court for refusal to answer a question
before a one-man grand jury by appeal in the nature
of certiorari. Affirmed.

*Lloyd A. Loomis* and *Fred R. Walker,* for appel-
lant.

*Thomas Read,* Attorney General, and *Edmund C.
Shepherd* and *Thomas A. Kenny,* Assistants Attor-
ney General, for the people.

*Chester P. O'Hara, amicus curiae.*

McALLISTER, J.   Petitioner was arrested on a warrant charging him with conspiracy to promote a lottery and a gambling or gaming enterprise, and the maintenance of same, contrary to the criminal statutes of this State.   On arraignment he stood mute, and a plea of not guilty was entered on his behalf.   Bail was fixed by the examining magistrate and was posted by defendant for his appearance at the examination.

Thereafter defendant was served with a subpoena, commanding him to appear forthwith before Hon. Homer Ferguson, Wayne county circuit judge, sitting as a one-man grand jury under 3 Comp. Laws 1929, § 17217 (Stat. Ann. § 28.943), for the purpose of investigating the existence of gambling and possible protection thereof by any officials in Wayne county, and matters relating thereto, including any failure to enforce the criminal law prohibiting gambling and the operation of gambling institutions or places, and the possible connection between such enterprises and law-enforcement officials.

After being sworn before the grand jury, petitioner was asked the following question:

"Did you and another man, acting as a committee for certain policy and number operators, call upon Harry Colburn, chief investigator for the prosecuting attorney of Wayne county, at the prosecuting attorney's office, on the fifth floor of police headquarters, in Detroit in the year 1935?"

Petitioner refused to answer the question on the ground that his answer might incriminate him; whereupon the assistant attorney general presented to the court a motion in writing requesting that petitioner be required under 3 Comp. Laws 1929, § 17220 (Stat. Ann. § 28.946), to answer the fore-

going question, which was incorporated in the motion. The circuit judge granted the motion, the question was read to petitioner, and he was advised that he was being granted immunity in accordance with 3 Comp. Laws 1929, § 17220 (Stat. Ann. § 28.946). Upon petitioner's further refusal to answer, he was advised by the court that he was required to answer under the provisions of the above statute; that he would not thereafter be prosecuted for any offense concerning which such answer might tend to incriminate him; and that he would be immune from prosecution for any offense as a result of such answer. Petitioner continued his refusal to answer and was thereafter adjudged guilty of contempt of court and ordered to be confined to jail for a period of 60 days and to pay a fine of $100. Petitioner filed application for leave to appeal to this court, which was granted, and now upon appeal in the nature of certiorari seeks to have the order of contempt set aside.

At the outset it is contended that Judge Ferguson is without authority to investigate or proceed, for the reason that the crime in question in the instant case was committed in Detroit, and that the recorder's court has exclusive jurisdiction over crimes committed in that city. However, the judge, as a one-man grand jury, is empowered to investigate gambling in Wayne county by virtue of 3 Comp. Laws 1929, §§ 16300, 17217 (Stat. Ann. §§ 27.3561, 28.943), and may require any person who may be able to give any material evidence respecting such offense to attend as a witness and answer such questions as the judge may require concerning any violation of the law about which he may be questioned.

The fact that the assistant attorney general instead of the prosecuting attorney made the motion

in writing requiring an answer by the witness (3 Comp. Laws 1929, § 17220 [Stat. Ann. § 28.946]) does not result in a defect in the proceedings, as contended by counsel for petitioner. The attorney general may intervene in any criminal proceedings in the State. 1 Comp. Laws 1929, § 176 (Stat. Ann. § 3.181). He has supervision of all prosecuting attorneys, 1 Comp. Laws 1929, § 178 (Stat. Ann. § 3.183); and assistants appointed by him may, when designated, appear for the State in any action, with the same powers and in like' capacity as the attorney general. 1 Comp. Laws 1929, § 183 (Stat. Ann. § 3.188).

The most important question in the case is whether the grant of immunity by Judge Ferguson resulted in complete immunity to petitioner—coextensive with his constitutional right of freedom from self-incrimination—from prosecution for any crime which his answers might divulge. The Constitution of Michigan, 1908, art. 2, § 16, provides:

"No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law."

Amendment 5 of the United States Constitution provides a like guaranty. The statute applicable to the grand jury proceedings in the instant case is 3 Comp. Laws 1929, § 17220 (Stat. Ann. § 28.946):

"No person shall upon such inquiry be required to answer any questions the answers of which might tend to incriminate him except upon motion in writing by the prosecuting attorney which shall be granted by such justice or judge, and any such questions and answers shall be reduced to writing and entered upon the docket or journal of such justice or judge, and no person required to answer such

questions upon such motion shall thereafter be prosecuted for any offense concerning which such answers may have tended to incriminate him."

The privilege against self-incrimination is peculiarly found in English and American jurisprudence and resulted largely from the abuses of the Star Chamber and popular resentment against the inquisitorial methods of the English ecclesiastical courts. Perhaps the first enunciation of the rule as a principle of the common law is found in a pronouncement of Sir Edward Coke in the case of *Boyer* v. *High Commission Court,* 2 Bulstr. 182 (80 Eng. Rep. 1052) ; repeated in *Burrowes* v. *High Commission Court,* 3 Bulstr. 48 (81 Eng. Rep. 42). But the privilege is mentioned in none of the great charters. It finds no place in the Bill of Rights of 1689. Its first incorporation in a charter or Constitution is found in section 8 of the Virginia Declaration of Rights of 1776, and subsequently in the Bill of Rights of the Federal Constitution (article 5).

In the trial of Aaron Burr for treason, Chief Justice Marshall had occasion to discuss the extent of the immunity necessary to overcome the constitutional privilege against self-incrimination, and, in ruling upon such question, he said:

"Many links frequently compose that chain of testimony, which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule, that no witness is compellable to furnish any one of them against himself. It is certainly not only a possible but a probable case, that a witness, by disclosing a single fact, may complete the testimony against himself; and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. That fact of itself might be unavailing; but all other facts without it

would be insufficient. While that remains concealed within his own bosom, he is safe; but draw it from thence, and he is exposed to a prosecution. The rule which declares, that no man is compellable to accuse himself, would most obviously be infringed, by compelling a witness to disclose a fact of this description." 1 Burr's Trial, p. 244, Fed. Cas. No. 14692e, 25 Fed. Cas. 38, 40.

In *Counselman* v. *Hitchcock*, 142 U. S. 547 (12 Sup. Ct. 195), where it was sought to compel a witness to answer incriminating questions under a statute providing that the admissions which a witness made should not thereafter be used against him, the court held that a witness was not compelled to testify under such a grant of immunity, for the reason that the immunity was not coextensive with the constitutional privilege against self-incrimination. The court said:

"In view of the constitutional provision, a statutory enactment, to be valid, must afford absolute immunity against future prosecution for the offense to which the question relates. In this respect, we give our assent rather to the doctrine of *Emery's Case*, in Massachusetts (107 Mass. 172 [9 Am. Rep. 22]), than to that of *People* v. *Kelly*, in New York (24 N. Y. 74); and we consider that the ruling of this court in *Boyd* v. *United States*, 116 U. S. 616 (6 Sup. Ct. 524), supports the view we take. Section 860, moreover, affords no protection against that use of compelled testimony which consists in gaining therefrom a knowledge of the details of a crime, and of sources of information which may supply other means of convicting the witness or party."

In *Brown* v. *Walker*, 161 U. S. 591, 596 (16 Sup. Ct. 644), in discussing the prohibition against self-incrimination, the court said:

"The maxim *nemo tenetur seipsum accusare* had its origin in a protest against the inquisitorial and manifestly unjust methods of interrogating accused persons, which has long obtained in the continental system, and, until the expulsion of the Stuarts from the British throne in 1688, and the erection of additional barriers for the protection of the people against the exercise of arbitrary power, was not uncommon even in England. While the admissions or confessions of the prisoner, when voluntarily and freely made, have always ranked high in the scale of incriminating evidence, if an accused person be asked to explain his apparent connection with a crime under investigation, the ease with which the questions put to him may assume an inquisitorial character, the temptation to press the witness unduly, to browbeat him if he be timid or reluctant, to push him into a corner, and to entrap him into fatal contradictions, which is so painfully evident in many of the earlier state trials, notably in those of Sir Nicholas Throckmorton, and Udal, the Puritan minister, made the system so odious as to give rise to a demand for its total abolition. The change in the English criminal procedure in that particular seems to be founded upon no statute and no judicial opinion, but upon a general and silent acquiescence of the courts in a popular demand. But, however adopted, it has become firmly embedded in English, as well as in American jurisprudence. So deeply did the iniquities of the ancient system impress themselves upon the minds of the American colonists that the States, with one accord, made a denial of the right to question an accused person a part of their fundamental law, so that a maxim, which in England was a mere rule of evidence, became clothed in this country with the impregnability of a constitutional enactment."

In the case of *In re Doyle,* 257 N. Y. 244, 256 (177 N. E. 489, 87 A. L. R. 418), Chief Judge Cardozo

of the court of appeals, speaking for the court, held that one invoking constitutional protection against self-incrimination may not be required to testify unless he is assured, not merely that his testimony will not be read in evidence against him, but that the risk of prosecution is ended altogether, in the following language:

"It is enough, to wake the privilege into life, that there is a reasonable possibility of prosecution, and that the testimony, though falling short of proving the crime in its entirety, will prove some part or feature of it, will *tend* to a conviction when combined with proof of other circumstances which others may supply. * * * The immunity must be as broad as the privilege destroyed."

The constitutional privilege against self-incrimination may not be supplanted by a statute which merely bars the introduction in evidence of a witness's testimony, leaving him vulnerable to prosecution and conviction by means disclosed by such testimony. *Arndstein* v. *McCarthy,* 254 U. S. 71 (41 Sup. Ct. 26). Immunity cannot supplant the constitutional privilege so long as the witness remains liable to prosecution criminally for any matters or causes in respect of which he was exempt, or to which his testimony related. *Emery's Case,* 107 Mass. 172 (9 Am. Rep. 22).

But where the immunity is sufficient, the witness is required to answer even though such answers are self-incriminating. In *Brown* v. *Walker, supra,* the court, in discussing the situation where the immunity granted was sufficient to overcome the privilege against self-incrimination, said:

"Stringent as the general rule is, however, certain classes of cases have always been treated as not falling within the reason of the rule, and, therefore,

constitute apparent exceptions. When examined, these cases will all be found to be based upon the idea that, if the testimony sought cannot possibly be used as a basis for, or in aid of, a criminal prosecution against the witness, the rule ceases to apply, its object being to protect the witness himself and no one else—much less that it shall be made use of as a pretext for securing immunity to others. * * *

"Equally is he deprived of claiming this exemption from giving evidence, if the legislature has declared that he shall not be prosecuted or punished for any offense of which he gives evidence. Any evidence that he may give under such a statutory direction will not be 'against himself,' for the reason that, by the very act of giving the evidence, he becomes exempted from any prosecution or punishment of the offense respecting which his evidence is given. In such a case he is not compelled to give evidence which may be used against himself in any criminal case, for the reason that the legislature has declared that there can be no criminal case against him which the evidence which he gives may tend to establish."

The constitutional provision should be construed to effect a practical and beneficial purpose. It is not necessary to protect witnesses against every possible detriment which might happen to them from their testimony, nor unduly to impede, hinder, or obstruct the administration of criminal justice. The statute of immunity should be upheld if it can be construed in harmony with the fundamental law. *Brown* v. *Walker, supra.* Instead of seeking for excuses for holding acts of legislative power to be void by reason of their conflict with the Constitution, or with certain supposed fundamental principles of civil liberty, the effort should be to reconcile them, if possible, and not to hold the law invalid unless the opposition between the Constitution and

the law be such that the court feels a clear and strong conviction of their incompatibility with each other. *Fletcher* v. *Peck,* 6 Cr. (10 U. S.) 87, 128.

Immunity offered must be as broad as the constitutional protection for which it is sought to be substituted; and the test is whether the immunity becomes a complete substitution for the constitutional privilege. *People* v. *Boyle,* 312 Ill. 586 (144 N. E. 342). To be valid the immunity must be absolute against any future prosecution for the offense to which the question relates. The mere prohibition of the introduction in evidence, or the use in any manner, of the discovery or evidence obtained from the party or witness affords no protection against that use of compelled testimony which consists in gaining therefrom a knowledge of the details of a crime, and the sources of information which may supply other means of convicting the witness or party. *Counselman* v. *Hitchcock, supra.*

We are of the opinion that the immunity offered by Judge Ferguson, in accordance with the statute, was absolute against any future prosecution by the State for any offenses to which any answers to questions put to the witness might have related. It afforded protection to the petitioner against the use of his testimony as well as the use of sources of information gained therefrom that might reveal crime on his part or supply other means of convicting him. The statute is as broad as is necessary for the purpose of granting complete immunity against any such subsequent prosecution by the State. The witness shall not "thereafter be prosecuted for *any* offense concerning which such answers may have *tended* to incriminate him;" and we construe the statute to afford a protection against prosecution by the State as broad as the constitutional provision securing the privilege against self-incrimination.

The grant of immunity from crime is a large responsibility. The legislature, acting in the public interest for the detection and suppression of crime, has lodged this extraordinary power in the discretion of the magistrate, and the immunity granted extends to any prosecution by the State for any offenses that may be disclosed by the answers of the witness or for any offenses to which such testimony may lead.

But is the immunity coextensive with his constitutional privilege against self-incrimination, if the witness may thereafter, because of his answers, be prosecuted in foreign or other jurisdictions? By the weight of authority, the right to claim the privilege against self-incrimination merely because of possible subjection to the criminal laws of a foreign jurisdiction is denied. See 8 Wigmore on Evidence (3d Ed.), § 2258.

In *King of Two Sicilies* v. *Willcox*, 7 State Trials (N. S.), 1050, 1068 (1 Sim. [N. S.] 301, 329–331, 61 Eng. Rep. 116, 128, 19 L. J. Ch. [N. S.] 202; 20 L. J. Ch. [N. S.] 417; 14 Jur. 163, 751; 15 Jur. 214), in answer to the contention of parties who objected to answer on the ground that they might subject themselves to penal consequences in a foreign land, Vice Chancellor Cranworth said:

"The rule relied on by the defendants, is one which exists merely by virtue of our own municipal law, and must, I think, have reference, exclusively, to matters penal by that law: to matters as to which, if disclosed, the judge would be able to say, as matter of law, whether it could or could not entail penal consequences. * * * No judge can know, as matter of law, what would or would not be penal in a foreign country; and he cannot, therefore, form any judgment as to the force or truth of the objection of a witness, when he declines to answer on such a

ground. * * * It is to be observed that, in such a case, in order to make the disclosure dangerous to the party who objects, it is essential that he should first quit the protection of our laws, and wilfully go within the jurisdiction of the laws he has violated. * * * I am of opinion, for these reasons, in the absence of all authority on the point, that the rule of protection is confined to what may tend to subject a party to penalties by our own laws.''

See, also, *State* v. *March,* 1 Jones Law (46 N. C.), 526, and *State* v. *Thomas,* 98 N. C. 599 (4 S. E. 518, 2 Am. St. Rep. 351).

In *Queen* v. *Boyes,* 1 B. & S. 311, 321 (121 Eng. Rep. 730, 30 L. J. Q. B. 301, 9 Cox, C. C. 32), it was contended, in answer to the production by the solicitor general of a pardon of the witness under the Great Seal, that, by statute, no such pardon under the Great Seal was pleadable to an impeachment by the Commons in Parliament, and it was insisted that this was a sufficient reason for holding that the privilege of the witness still existed, upon the ground that, though protected by the pardon against every other form of prosecution, the witness might possibly be subjected to parliamentary impeachment. It was also contended that a bare possibility of legal peril was sufficient to entitle a witness to protection. The court said:

''We are of opinion that the danger to be apprehended must be real and appreciable, with reference to the ordinary operation of law in the ordinary course of things—not a danger of an imaginary and unsubstantial character, having reference to some extraordinary and barely possible contingency, so improbable that no reasonable man would suffer it to influence his conduct. We think that a merely remote and naked possibility, out of the ordinary course of the law and such as no reasonable man

would be affected by, should not be suffered to obstruct the administration of justice. The object of the law is to afford to a party, called upon to give evidence in a proceeding *inter alios,* protection against being brought by means of his own evidence within the penalties of the law. But it would be to convert a salutary protection into a means of abuse if it were to be held that a mere imaginary possibility of danger, however remote and improbable, was sufficient to justify the withholding of evidence essential to the ends of justice."

In *Brown* v. *Walker, supra,* in answer to the contention that a witness, granted immunity from prosecution by the Federal government, did not obtain such immunity against prosecution in the State courts, according to the Fifth Article of the Constitution, it was declared that the Constitution and the laws of the United States were the supreme law of the land; and the judges in every State shall be bound thereby—with the implication that State courts would be bound by immunity granted in the Federal courts. The court, however, went on to discuss the extent of the immunity granted, and gave further grounds for its holding on the ground that prosecution in another jurisdiction was not a real or probable danger, in the following language:

"It is not that he shall not be prosecuted for or on account of any crime concerning which he may testify, which might possibly be urged to apply only to crimes under the Federal law and not to crimes, such as the passing of counterfeit money, et cetera, which are also cognizable under State laws; but the immunity extends to any *transaction, matter or thing* concerning which he may testify, which clearly indicates that the immunity is intended to be general, and to be applicable whenever and in whatever court such prosecution may be had.

"But even granting that there were still a bare possibility that by his disclosure he might be subjected to the criminal laws of some other sovereignty, that, as Chief Justice Cockburn said in *Queen* v. *Boyes,* 1 B. & S. 311, in reply to the argument that the witness was not protected by his pardon against an impeachment by the House of Commons, is not a real and probable danger, with reference to the ordinary operations of the law in the ordinary courts, but 'a danger of an imaginary and unsubstantial character, having reference to some extraordinary and barely possible contingency, so improbable that no reasonable man would suffer it to influence his conduct.' Such dangers it was never the object of the provision to obviate.

"The same answer may be made to the suggestion that the witness is imperfectly protected by reason of the fact that he may still be prosecuted and put to the annoyance and expense of pleading his immunity by way of confession and avoidance. This is a detriment which the law does not recognize."

In the case of *In re Doyle, supra,* involving the question of an offer of immunity in a bribery case, Judge Cardozo, speaking for the court, in answer to the contention that the examination of the witness might reveal criminal liability for tax evasion, said:

"We put aside as remote and unsubstantial the supposed peril of exposure to prosecution for the making of false tax returns to State or Federal officers (*Mason* v. *United States,* 244 U. S. 362 [37 Sup. Ct. 621] ; *Jack* v. *Kansas,* 199 U. S. 372 [26 Sup. Ct. 73, 4 Ann. Cas. 689])."

In *Jack* v. *Kansas,* 199 U. S. 372 (26 Sup. Ct. 73, 4 Ann. Cas. 689), it was contended that the denial of a party's claim of the right to refuse to answer questions in a State inquisitorial proceeding under grant of immunity provided by the State statute was in

violation of the Fourteenth Amendment to the Constitution of the United States and deprived the witness of his liberty without due process of law when he was condemned to imprisonment for contempt by reason of his refusal. It was claimed that such immunity was not broad enough to protect the party from prosecution under . Federal laws. In considering this contention in its opinion, the court remarked:

"Assuming for this purpose that if the statute failed to give sufficient immunity from prosecution or punishment, it would violate the Fourteenth Amendment, and that an imprisonment by virtue of the statute would be depriving the witness of his liberty, without due process of law, we come to an examination of the extent of the immunity in this case."

The court, however, held that, under the circumstances of that case, it could not be presumed that any Federal prosecution would ever take place and that such a danger was so unsubstantial and remote that it was not necessary to provide against it.

Uncertainty with regard to the general rule appeared in *Ballmann* v. *Fagin,* 200 U. S. 186 (26 Sup. Ct. 212), where Mr. Justice Holmes, in passing upon the contention of a witness who refused to answer in Federal grand jury proceedings on the ground that he would incriminate himself under State statutes, sustained the claim of the witness to the privilege in the following language:

"As we have said, he set forth that there were many proceedings on foot against him as a party to a 'bucket shop,' and so subject to the criminal law of the State in which the grand jury was sitting. According to *United States* v. *Saline Bank,* 1 Pet. (26 U. S.) 100, he was exonerated from disclosures

which would have exposed him to the penalties of the State law. See *Jack* v. *Kansas,* 199 U. S. 372 (26 Sup. Ct. 73, 4 Ann. Cas. 689), decided this term. One way or the other we are of opinion that Ballmann could not be required to produce his cash book if he set up that it would tend to criminate him."

Thereafter, in *Hale* v. *Henkel,* 201 U. S. 43 (26 Sup. Ct. 370), it appeared that the holding in the *Ballmann Case* was departed from, and the court seemed to return to an unqualified application of the previous rule and held that a possibility of prosecution under State statutes would not impair the immunity against self-incrimination offered in Federal courts, citing *Queen* v. *Boyes, supra,* and *King of Two Sicilies* v. *Willcox, supra;* and it was sought to distinguish the case of *United States* v. *Saline Bank,* 1 Pet. (26 U. S.) 100. But in *United States* v. *Murdock,* 284 U. S. 141 (52 Sup. Ct. 63, 82 A. L. R. 1376), Mr. Justice Butler, speaking for the court, said:

"The English rule of evidence against compulsory self-incrimination, on which historically that contained in the Fifth Amendment rests, does not protect witnesses against disclosing offenses in violation of the laws of another country. *King of the Two Sicilies* v. *Willcox,* 7 State Trials (N. S.), 1050, 1068. *Queen* v. *Boyes,* 1 B. & S. 311, 330. This court has held that immunity against State prosecution is not essential to the validity of Federal statutes declaring that a witness shall not be excused from giving evidence on the ground that it will incriminate him, and also that the lack of State power to give witnesses protection against Federal prosecution does not defeat a State immunity statute. The principle established is that full and complete immunity against prosecution by the government compelling the witness to answer is equivalent to the protection furnished by the rule against compulsory self-incrimination."

It should be noted, however, that the case of the *King of the Two Sicilies* v. *Willcox* was decided upon the ground that the privilege could not be claimed merely because of the fact that a witness might be subject to the criminal laws of a foreign jurisdiction; while *Queen* v. *Boyes* was decided upon the ground that the danger of another prosecution was remote, improbable, and only an imaginary possibility; and it would seem that the English cases are not sound support for the general rule so announced in the *Murdock Case,* as English jurisdictions allow the privilege to be asserted where the foreign law under which the party might be incriminated is set out in the pleadings. See *United States of America* v. *McRae,* 37 L. J. Ch. 129 (L. R. 3 Ch. App. 79; 17 L. T. 428; 16 W. R. 377). In *East India Co.* v. *Campbell,* 1 Ves. Sr. 246 (27 Eng. Rep. 1010), where a discovery of facts would render the defendant punishable in the British criminal jurisdiction in Calcutta, though not in England, the privilege was affirmed and the answer was not compellable; and in *Brownsword* v. *Edwards,* 2 Ves. Sr. 243 (28 Eng. Rep. 157), where examination would subject a party to punishment in the ecclesiastical court, it was held that the defendant was not bound to answer. Analogous to the foregoing cases is *United States* v. *Saline Bank, supra,* where a bill for discovery and relief was filed in the Federal court in Virginia against stockholders of a bank, and it was held by Chief Justice Marshall that, where an examination of a witness would subject him to penalties under a Virginia statute, he came within the privilege against self-incrimination.

However, the uncertainty remarked in the *Ballmann Case* with regard to the rule as to immunity in Federal courts was reemphasized in *United States, ex rel. Vajtauer,* v. *Com'r of Immigration,* 273 U. S.

103 (47 Sup. Ct. 302), where, in passing upon the contention of a party that answers put to him at a hearing upon immigration laws in Chicago for the purpose of deportation might have tended to incriminate him under an Illinois syndicalism statute, Mr. Justice Stone, speaking for the court, after finding that the claim to the privilege must be asserted and that the party had failed to do so, said:

"This conclusion makes it unnecessary for us to consider the extent to which the Fifth Amendment guarantees immunity from self-incrimination under State statutes or whether this case is to be controlled by *Hale*.v. *Henkel*, 201 U. S. 43 (26 Sup. Ct. 370); *Brown* v. *Walker*, 161 U. S. 591, 608 (16 Sup. Ct. 644); compare *United States* v. *Saline Bank*, 1 Pet. (26 U. S.) 100; *Ballmann* v. *Fagin*, 200 U. S. 186, 195 (26 Sup. Ct. 212)."

This would seem to still leave open the entire question which has been the cause of much apparent contradiction and restatement.

But in *United States* v. *Murdock*, 290 U. S. 389 (54 Sup. Ct. 223), the rule was again stated:

"Not until this court pronounced judgment in *United States* v. *Murdock*, 284 U. S. 141 (52 Sup. Ct. 63, 82 A. L. R. 1376), had it been definitely settled that one under examination in a Federal tribunal could not refuse to answer on account of probable incrimination under State law. The question was involved, but not decided, in *Ballmann* v. *Fagin*, 200 U. S. 186, 195 (26 Sup. Ct. 212), and specifically reserved in *United States, ex rel. Vajtauer,* v. *Com'r of Immigration*, 273 U. S. 103, 113 (47 Sup. Ct. 302)."

We believe that this ancient privilege should be maintained against limitations that we conceive tend to make it ineffectual, futile, and subversive of the spirit and letter of the Bill of Rights. Under our

Federal system of government, with coextensive jurisdiction of State and national government, a person subject to the laws of a State is, at the same time, subject to the laws of the Federal government. A citizen of a State is a citizen of the United States (Fourteenth Amendment to the United States Constitution). After a review of the authorities and a consideration of the constitutional provisions and the principles involved, we are of the opinion that the privilege against self-incrimination exonerates from disclosure whenever there is a probability of prosecution in State or Federal jurisdictions.

While this court has held in *People* v. *Lay,* 193 Mich. 17 (L. R. A. 1917 B, 608), that testimony given by a bankrupt in bankruptcy proceedings, for which immunity from prosecution in any criminal proceeding is granted by Federal law, cannot be used against him in State criminal proceedings, nevertheless it has been held that the converse is not valid, but that immunity granted under a State statute is ineffective in a criminal proceeding in Federal court. *United States* v. *Smith,* 51 Fed. (2d) 803 (affirmed by circuit court of appeals, 58 Fed. [2d] 735; certiorari to the supreme court of the United States denied, 287 U. S. 631 [53 Sup. Ct. 82]).

To overcome the privilege, the extent of the immunity would have to be of such a nature that it would protect, not only against State prosecution, but also against any reasonably probable Federal prosecution. The claim of the privilege in the face of a State immunity statute cannot be used as a subterfuge or pretense to refuse to answer in proceedings to detect or suppress crime. But neither can the grant of immunity be used to compel answers that will lead straight to Federal prosecution. Whenever the danger of prosecution for a Federal offense is substantial and imminent as a result of

disclosures to be made under a grant of immunity by the State, such immunity is insufficient to overcome the privilege against self-incrimination.

But it is strenuously urged by counsel for petitioner that, although he may have complete protection from prosecution by reason of the grant of immunity, nevertheless, the fact that he is a defendant in a criminal case, rather than merely a witness, deprives him in effect of a right to trial upon the criminal charges. It is asserted that one publicly charged with crime, carrying with it eventual notoriety and degradation, cannot be compelled to accept immunity in lieu of his right to trial. None of the cases cited by counsel for petitioner are determinative, inasmuch as none of them concerned instances in which one under arrest on criminal charges was required to submit to examination under grant of immunity. However, *In re Kittle,* 180 Fed. 946, Judge Learned Hand held that one under indictment for crime cannot insist upon the privilege against self-incrimination, where immunity from further prosecution, given by Federal statute, is granted. In passing upon this question, Judge Hand said:

"The second point is of the scope of the immunity clause in the Sherman act. The argument is that, since the immunity prescribed by the act includes prosecution, it is too late to question any one after he has been indicted, because part of the consideration for his testimony has already been taken from him. All this rests upon the assumption that I must infer that the present inquiry relates to the subject matter of the present indictment, and that I should not have the right to do till the questions were asked. However, as in all probability they do relate to that subject matter, I may as well dispose

of it now, though out of order, and so obviate at least some of the constant recourse to the court. Therefore I shall assume that the inquiry is of the subject matter of some crime, and, indeed, of the crime laid in the existing indictment. When so questioned, the witness must answer. *Brown* v. *Walker,* 161 U. S. 591 (16 Sup. Ct. 644). And, when given, his answer will thereafter protect him from further prosecution. It will be a good bar to this very pending prosecution, if it be pertinent to the subject matter.

"The petitioner's theory goes further than this, and requires that the government should elect at the outset whether the person is to be witness or defendant, and, having once elected, that it should remain consistent. We must remember at the outset that the question raised has nothing whatever to do with the constitutional privilege against incrimination, because that privilege could not be claimed, if all prosecution were barred from the date of the testimony (*Brown* v. *Walker,* 161 U. S. 591 [16 Sup. Ct. 644]), regardless of whether the witness had already been indicted or not. The only necessary protection is that by no peradventure could the disclosure result in conviction (Mr. Justice Day, *obiter,* in *Heike* v. *United States,* 217 U. S. 423, 431 [30 Sup. Ct. 539]), and to provide against that possibility it was enough to forbid any future criminal proceedings as soon as the testimony came out.

"The question is, therefore, of the meaning of the statute, not of the scope of the Constitution. Is there any ground for saying that the bargain with the witness is, as it were, retroactive, so that he cannot get his *quid pro quo* by testifying, if he has already been indicted? I think not. As I have said, the statute would be constitutionally broad enough, if it forbade any future prosecution, and its scope is fairly inferable from its purpose. As the purpose was only to compel such testimony, and the

Constitution was satisfied by the more limited construction, the fairer interpretation of the will of Congress is that it went no further than it had to go, and that they meant to give only a future immunity. No one has found any authority upon the question, but I think there can be small doubt of the correctness of this construction.''

We are of the opinion that the foregoing case properly announces the rule. The constitutional privilege is satisfied if the witness cannot be prosecuted as a result of his answer. ''The protection of the Constitution, and likewise of its substitute, the immunity order, is against punishment.'' *People v. Rockola*, 346 Ill. 27, 32 (178 N. E. 384). ''The design of the constitutional privilege is not to aid the witness in vindicating his character, but to protect him against being compelled to furnish evidence to convict him of a criminal charge.'' *Brown v. Walker, supra.*

With complete immunity against prosecution by the State for any offense to which his answers relate, we fail to see where any constitutional right against self-incrimination is endangered, because the witness happens to be charged with an offense at the time of questioning in the grand jury proceedings. None of his answers can be used against him; and no facts disclosed by him that may lead to information that might be used to prosecute him, can thereafter be used in any such prosecution. The alternative of dismissal of the charge is unnecessary. If the charge were dismissed, the witness could be required to answer under subpoena. If he refused to answer, he could be rearrested on the original charge and also jailed for contempt. If his answer were nonincriminating, he could likewise be rearrested. If he secures immunity by reason of his

answers, all offenses to which such answers relate are excused from prosecution and punishment; and one who secures immunity by reason of his answers, is entitled to have the indictment, for an offense to which such answers relate, quashed by the court. Merely proceeding to trial for the offense under which petitioner is charged affords him no advantage or benefit as far as the grand jury proceedings are concerned. Whether he would be found innocent or guilty of such charge, he could be obliged thereafter to submit to examination before the grand jury. By the granting of immunity for answering the question asked, none of petitioner's rights or privileges under the Bill of Rights are infringed.

The statute is constitutional. Petitioner is obliged to answer the question put by the court, under penalty for contempt.

The order of the circuit judge is affirmed.

BUSHNELL, C. J., and POTTER, NORTH, and BUTZEL, JJ., concurred with McALLISTER, J.

WIEST, J. (*dissenting*). I am of the opinion that a person indicted for a felony may not be brought before the indicting authority and, upon tender of immunity prescribed by statute, be punished for contempt of court in refusing to answer a question relating to the subject matter of the indictment which he states, under oath, will tend to incriminate him. I note a distinction between an accused in custody under an indictment and a witness not under indictment.

Court-compelled self-incrimination has been abhorrent to English-speaking people for centuries and inhibited at common law, and this inheritance has been imbedded in the Constitution of the United

States and that of the State of Michigan. The Michigan statute, granting immunity from prosecution of a witness compelled to make self-incrimination, does not extend to the instant case.

The prisoner is not guilty of contempt of court and should be released from custody under such charge.

SHARPE and CHANDLER, JJ., concurred with WIEST, J.

CHANDLER, J. (*dissenting*). I am in accord with the opinion of Mr. Justice WIEST.

Respondent (except for bail allowed by the magistrate) is in jail by reason of an indictment and arrest whereby he is charged with the commission of a felony. He is also in jail (except for the bail allowed by this court pending review) for contempt of court for refusing to give testimony relative to the very offense with which he is charged.

The special prosecutor contends that the manner or character in which respondent is brought before the grand jury to be interrogated is unimportant.

The prosecutor in the case of *In re Harrand,* 254 Mich. 584, contended likewise.

If we follow the decision of this court, as expressed by Justice FEAD in the *Harrand Case,* we must hold that respondent is entitled to testify with the freedom and rights of a witness, assured of the statutory immunity, and that it is important to him, to the public, and to the person he may accuse, that he shall not be required to give evidence " 'under the shadow of a policeman's club' or a sentence to jail."

SHARPE and WIEST, JJ., concurred with CHANDLER, J.